## DECIDED IN THE

# SUPREME COURT OF APPEALS

### OF

# WEST VIRGINIA.

## Wheeling.

POSTLEWAITE *et al.* *v.* WISE.

Decided November 13, 1880.

*(Absent, HAYMOND, JUDGE).

1880
Special Term.

Postlewaite *et al.*
*v.*
Wise.

1. In an action of ejectment, brought under the code of Virginia of 1860, the land is described with sufficient accuracy in the declaration, when the county in which it lies is stated, and it is said to lie adjoining what is known as the old William Postlewaite farm, and that it contained one hundred and fourteen acres, and its boundaries are set out in detail by courses and distances; or where it is stated in what county it lies, the number of acres it contains, its boundaries by courses and distances in detail, and is described as the same that was conveyed to the plaintiffs by the heirs of William Postlewaite, deceased, by deed bearing date June 10, 1856, duly recorded in the recorder's office of said county.

---

*Counsel in the court below.

1880
Special Term.

Postlewaite,*et al.*
v.
Wise.

2. It is sufficient in such a declaration to allege, that the plaintiffs on a certain day were possessed of and claimed title to this tract of land in fee simple, describing it as above, and that the defendant afterwards, to wit, on a certain day named, entered into the said premises and ejected them from their said land, and still holds them out of the possession thereof; it not being necessary to say in such a declaration that this withholding the possession from them was *unlawful.*

3. If such declaration contained several counts; and no damages are claimed at the end of each count, but the entire declaration concludes: "In all to the damage of the plaintiff $500.00, and therefore they sue," this claim of damages must be regarded as on account of the wrongs named in each several count, and therefore a verdict and judgment may on such a declaration be rendered for damages.

4. If on the first trial of such a case, copies of certain deeds offered by the plaintiffs are admitted, and the defendant objects to them, because their acknowledgment and certificate of recordation are insufficient, and on a writ of error they are decided by this Court to have been properly received in evidence, and the case being for other reasons remanded, on the second trial thereof copies of the same deeds with the same acknowledgments and certificates are again offered in evidence, the court below is bound to admit them; and this Court on a writ of error will not review its action, though the case, when formerly before this Court, was decided by only two Judges.

5. Upon a demurrer to the evidence by the defendant the circuit court properly held, that a party, under whom the plaintiffs claimed the land, was the heir of a certain other party, and that such party was dead, when the deed to them recited this as a fact, and was signed not only by the party named as such heir, but by the brothers and sisters of the person named and stated to be dead, such death and heirship may, under the circumstances, be proved by the recitals of a deed.

Writ of error and·*supersedeas* to a judgment of the circuit court of the county of Monongalia rendered on the 21st day of September, 1877, in an action of ejectment in said court then pending, wherein Jarvis Postlewaite and others were plaintiffs, and John H. Wise was defendant, allowed upon the petition of said Wise.

Hon. Charles L. Lewis, late judge of the second judicial circuit, rendered the judgment complained of.

1880
Special Term.

Postlewaite *et al.*
v.
Wise.

'GREEN, PRESIDENT, furnishes the following statement of the case:

Jarvis Postlewaite and Albert Postlewaite brought their action of ejectment in the circuit court of Monongalia county in June, 1865, against John Wise, to recover a certain tract of land in said county. The tract of land is described in the first count of the declaration, as "adjoining what is known as the old William Postlewaite farm, containing one hundred and fourteen acres," and its metes and bounds are set forth, all the corners and distances and abuttals being given, and it is further described in the second count, as lying and being in said county, and as the same tract that was conveyed to the plaintiffs by the heirs of William Postlewaite, Jr., by deed bearing date the 10th day of June, 1856, and as part of the lands conveyed to William Postlewaite, Jr., in his lifetime by Henry Barrichman and wife by deed dated 11th of September, 1809, recorded in the recorder's office of said county, and its metes and bounds and abuttals are again set forth in detail. These two counts are in the names of Jarvis Postlewaite and Albert Postlewaite as plaintiffs. In a third count, which is in the name of Jarvis Postlewaite and several others, heirs at law of Ruth Postlewaite, plaintiffs, the tract of land is described as lying and being in said county, it being the same tract of land that was conveyed by Henry Barrichman and wife to William Postlewaite, by deed bearing date the 11th day of September, 1809, and now on record in the recorder's office of said county, in book D, page 482, but neither its boundaries nor size are set out in this count; and the declaration concludes as follows: "in all to the damage of the plaintiffs $500.00, wherefore they sue."

A trial of the case was had in February, 1868. The plaintiffs claimed title by patents to Denmore Howard, dated October 12, 1789, and Davis Shockley, dated March 13, 1805, and by deeds from these patentees to the

grandfather of the plaintiff, William Postlewaite, whose heirs conveyed to the plaintiffs. The defendant claimed title through a patent granted to Samuel Lemley, on August 1, 1856. On the trial the plaintiffs offered several deeds in tracing their title to the original patentees, Howard and Shockley, which were objected to by the defendants, on the ground that the several acknowledgments and certificates of recordation were informal and imperfect. A verdict and judgment was rendered in favor of the plaintiffs; and the defendant brought the case into this Court by a writ of error. The case was reviewed; and a new trial awarded by this Court for the reasons set forth in Judge Maxwell's opinion in 3 W. Va. 455, et seq. But the Court expressly decided that the acknowledgments and certificates of the various deeds offered by the plaintiff in evidence were sufficient, and that the court below properly admitted those deeds in evidence.

On the return of the case to the circuit court the defendant demurred to the declaration and each count thereof; and the court overruled his demurrer. The case was again tried on the plea of not guilty, and a verdict was rendered in favor of the plaintiffs in the first two counts in the declaration for the entire tract of land in dispute, and that the plaintiffs had a fee simple title thereto, and also for $95.00 damages. The plaintiffs proposed to release this verdict to the extent of one seventh part of this tract of land, it being the share of Mary Long, one of the seven children of William Postlewaite, which the plaintiffs had failed to prove had been conveyed to them; but the defendant objected and moved to set aside the verdict, and asked a new trial. The court set aside the verdict and awarded a new trial.

On March 19, 1877, the case was again tried by a jury who found this verdict :

" We, the jury, find for the plaintiffs, Albert and Jarvis Postlewaite, six sevenths undivided of the land in the declaration mentioned and described, being the

same land and interest conveyed to them by Joseph Postlewaite, Jarvis Postlewaite and Elizabeth Postlewaite, his wife, Jacob Critten and Deborah, his wife, Gabriel Critten and Phebe, his wife, and Malinda Clayton, children and heirs at law of William Postlewaite, Sr., deceased, by deed bearing date the 10th day of June, 1856, and the one seventh undivided of said land inherited by the said plaintiffs from their father, William Postlewaite, Jr., deceased, who was also a child and heir at law of said William Postlewaite, Sr., deceased, and bounded as follows: Beginning at a black oak marked 'B. O. stump' on the plat filed in this cause marked ' A ;' thence running south twenty-four and one half east ninety-one poles to a hickory ; thence south sixty-three degrees east twenty and one half poles to a white oak ; thence south eighty-one degrees east one hundred and seventy-six poles to a stone ; thence north fifty and one half degrees east fifty-three poles to pointers ; thence north fifty-one degrees west one hundred and forty-six poles to a poplar at ' B ' on said plat, and thence west to the place of beginning, the whole estimated to contain one hundred and fourteen acres. And we further find that the said plaintiffs have the fee simple in said six sevenths undivided of said land ; and we also find for the said plaintiffs damages for the rents and profits on said six sevenths undivided of said land the sum of $325.00. All of which findings are subject to the opinion of the court on the demurrer to the evidence filed in this cause—that is to say, if the law arising on the said demurrer to said evidence be for the plaintiffs, then we find for the plaintiffs aforesaid, but if the law arising on the said demurrer be for the defendant, then we find for the defendant."

The demurrer to the evidence referred to shows, that the plaintiffs, Jarvis Postlewaite and Albert Postlewaite, traced this title to the land in controversy to the original patentees of this land, whose patents issued severally October 12, 1789, and March 13, 1805 ; and their title to six undivided seventh parts of this land is satisfactorily

shown, if the deeds, on which they relied and which were admitted in evidence by the court, were properly admitted. They were objected to, because they were copies from the clerk's office of Monongalia county, and it was insisted by the defendant, that their acknowledgment and certificates were not such as authorized the admission of four of these deeds to record. But the court overruled these objections, and the defendant took four bills of exceptions thereto. These four deeds had been admitted in evidence on the first trial of this cause on the same certificates and acknowledgments; and this court held, when the cause was formerly before it, that the court did not err in so admitting them. See 3 W. Va. 455.

The defendants, traced their title to Samuel Lemley, who obtained a patent covering the disputed land on August 1, 1856, and showed that he had been in possession of this disputed land for several years and had taken the rents and profits thereof. These rents and profits were shown to have amounted to as much as the damages assessed by the jury. The defendant introduced the assessor's books to prove, that the land in controversy had been omitted from the assessor's books and not taxed from 1813 to 1856, and also some evidence tending to show, that this tract of land and any claim to it had prior to 1835 been abandoned by those under whom the plaintiffs claimed. The evidence of this abandonment of claim was rebutted by the plaintiffs' evidence showing, that those, under whom the plaintiffs claimed this land, had always set up a claim thereto. The plaintiffs dispute, that the assessor's books show satisfactorily, that this land in dispute was ever omitted from the assessor's books or not taxed. The assessor's books show that more than one hundred and fourteen acres, the quantity of land in dispute, answering in a general way the description on the assessor's books of the location of the land, were always assessed to those, under whom the plaintiffs claim. It is obvious however, that some land and

more than this one hundred and fourteen acres, which

belonged to the plaintiffs or those under whom they claimed, had been omitted from the assessor's books and not taxed. The commissioner's books, when explained by the deeds in evidence in the cause, render it very probable, that this land in controversy had been omitted from the assessor's books for many years prior to and after 1835. This, taken in connection with the fact proven, that in 1856 the plaintiffs entered the land in controversy, one hundred and fourteen acres, on the assessor's books and had it charged with taxes and interest from 1832, shows satisfactorily, that it was omitted from the assessor's books and not taxed from 1832 to 1856. This being the case, the main question in the case is: Were the parties, under whom the plaintiffs claim, by themselves or their tenants in actual possession of the land in controversy on the 27th day of February, 1835? If they were not, then by the act of that date (see Session Acts of 1834, 1835, ch. 13, § 2, page 12) this land was forfeited to the State on the first day of July, 1836, which time was extended by act of March, 23, 1836, to November 1, 1836. See Acts of 1835–36, ch. 3, § 1, page 7.

For a number of years after 1837 the parties, under whom the plaintiffs claim, were in the actual possession of the disputed land, yet if it had been actually forfeited to the State, such possession could not divest the State's title or prevent the party, under whom the defendant claims, obtaining a valid patent in 1836. See *Askin's heirs* v. *Pride*, 15 Gratt. 200. It is satisfactorily proven, that the parties, under whom the plaintiffs claim, used this land claiming title thereto and having a portion of it enclosed and used for pasturage for years prior to the time, one Henry Barrichman took possession thereof. The difficulty is in ascertaining when this was. He purchased this land of one Rogers and took possession of it and built a cabin on it and lived upon it some time, till he was ousted by a writ of unlawful entry and detainer brought by parties under whom the plaintiffs claim.

During this time they were not in the actual possession of the land; but how long the parties, under whom the plaintiffs claim, were thus excluded from the possession this land does not distinctly appear. One of the plaintiffs' witnesses says it was not more than a year; another, about eighteen months; and another says, that Barrichman was on this land two summers. One of the plaintiffs' witnesses testifies, that Barrichman cut the logs to build his house in the winter of 1834–35. Others say, he entered on the land in the spring of 1836; and others, that he did not enter on the land or cut any logs thereon or buy the land of Rogers till 1836. The deed for the land made by Rogers to the brother of Barrichman was produced by the plaintiffs; and it bears date September 26, 1835; but Henry Barrichman, who was introduced as a witness by the defendant, testifies that he purchased this land about harvest, 1833; that it was run off to him in October, 1833; that he worked on it in the winter of 1833-34, and took full possession of it April 1, 1834, and was ousted from it in October, 1836. But his statement as to the time he took possession is contradicted by not only the plaintiffs' witness but also by the defendant's, and is unsustained by any of the testimony. He is the only witness who states the date, when he was ousted; and he explains the date of the deed from Rogers for the land by saying that he held a title-bond for the land, which he gave up, when by his direction this deed was made to his brother. His evidence is much weakened by proof that he had made statements inconsistent with his testimony.

The witnesses for the defendant state, that Henry Barrichman took possession of the land in 1835. Some of them fail to state at what time of the year; others say, it was in the early part of the year, the winter, of 1834-1835. It is unnecessary to detail the voluminous testimony on this point. It has been carefully examined, and I conclude, that it fails to prove satisfactorily, that Henry Barrichman took possession of this land prior to

February 27, 1835, and that upon this evidence a jury might have decided, either that he took possession of this land prior to that time, or subsequently to it, and such verdict in neither case could have been properly set aside by a court as unsustained by the evidence.

Upon the demurrer to the evidence the court rendered the following judgment on September 21, 1877:

" This day came the parties, by their attorneys, and on motion of Joseph Postlewaite, Jarvis Postlewaite, Jacob Critten and Deborah, his wife, late Deborah Postlewaite, Gabriel Critten and Phebe, his wife, late Phebe Postlewaite, and Malinda Clayton, heir-at-law of Ruth Postlewaite, deceased, this cause is dismissed as to them, and judgment is rendered against them and in favor of the defendant for his costs incurred by reason of their having been made parties plaintiff in the cause; and the defendant's demurrer to the plaintiffs' evidence, filed at the last March term, having been maturely considered, it seems to the court, that the matter shown in evidence to the jury is sufficient in law to maintain the issue on the part of the plaintiffs. Therefore it is considered by the court, that the plaintiffs recover against the defendant their term yet to come of and in the six sevenths undivided of the messuage and lands, with the appurtenances, in the said verdict mentioned, together with $325.00, the damages assessed by the jury, and their costs by them about their suit in this behalf expended. Whereupon the plaintiffs pray a writ to the sheriff of this county to be directed to cause him to have his possession of his term aforesaid yet to come, &c., and to him it is granted."

To which judgment the defendant obtained a writ of error and *supersedeas*.

*Berkshire & Sturgiss*, for plaintiff in error.

*P. H. Keck*, for defendants in error, cited the following authorities:

1880<br>Special Term.<br>Postlewaite et al<br>v.<br>Wise.

3 W. Va. 452; Code of Va. 1860, ch. 135, §§ 7, 8, 9, 18, 25, 26, 27; 11 Gratt. 78; 8 W. Va. 515.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first question presented by this record is: Did the circuit court err in overruling the defendant's demurrer to the declaration, and to the first and second count therein? We need not consider the third count; for the overruling of the demurrer thereto, if erroneous, was not prejudicial to the defendant, the plaintiff in error, as there was a verdict and judgment for him against the plaintiff on this third count.

The first objection urged to the first and second counts is, that the premises claimed are not described with convenient certainty, so that from such description possession thereof may be delivered; as required by section 8 of chapter 135 of Code of 1860. When this act was passed, at the revisal of 1849, the writ of right was abolished. The declaration in a writ of right always sets out the boundaries of the land demanded. See Rev. Code of 1819, volume 1 page 464; *Beverley* v. *Fogg*, 1 Call 421; *Tuberville* v. *Long*, 3 H. & M. 313. But in the action of ejectment prior to the Code of 1849, there was no regulation by statute how the land should be described in the declaration, and by the common law then existing it might be done in a general manner. See *Barclay* v. *Howell's Lessee*, 6 Pet. 498. There was no necessity then to describe the land with such certainty in the declaration, that possession thereof might be delivered. *Cottingham* v. *King*, 1 Burr. 623, 630. If the sheriff put the plaintiff in possession of more land than he was entitled to, because of the vagueness of its description in the declaration, the court on motion awarded a writ of restitution, unless the plaintiff would elect to have a feigned issue to try the question, whether he had obtained possession of more land than he was entitled to. This was at least the practice in England and in

New York. See *Jackson* v. *Hasbrouck*, 6 Johns. 366. This was changed in New York by an act enacting, that "In a declaration in ejectment the premises claimed shall be described with convenient certainty, *designating the number of the lot or township, if any, in which they shall be situated ; if none, stating the name of the last occupants of lands adjoining the same, if any; if there be none, stating the natural boundaries, if any ; and if none, describing such premises by metes and bounds, or in some other way,* so that from such description, possession of the premises claimed may be delivered. See Revised Statutes of state of New York volume 3 page 573 § 8.

In the revisal of 1849 in Virginia the Legislature inserted this section omitting the parts which we have italicised. The reason for this omission seems obvious. In a thickly settled State like New York the plaintiff could with entire convenience designate the number of the lot and state the names of the last occupants of lands adjoining the premises claimed or the other particulars set forth in the statute; but in Virginia, where there was much wild land, and where tracts of land in dispute were often very large, sometimes amounting to more than one hundred thousand acres, it would have been often very inconvenient to the plaintiff to give the names of all the last occupants of the lands adjoining the tract in controversy, and his so doing would generally have been of no practical benefit to the defendant or to the sheriff in delivering possession of the land, as a survey made in the cause would supply all such information, and it could not be in such cases well supplied except by a survey. The omission of the italicised portions of this law of New York shows, that in this State and Virginia a less degree of minute accuracy in describing the land in the declaration in an ejectment suit was intended to be required. But even under the statutes of New York it was held, that the description of the premises in the declaration was sufficiently certain, when it was described as *about* fifty acres in the southern part of a specified lot. See *John* v. *Northrup*, 23 Barb. 25.

In *Budd* v. *Bingham*, 18 Barb. 498, the court held the description of the premises insufficient. It was in fact as understood by the court utterly unintelligible.

In *Olendorf* v. *Cook*, 1 Lan. 38, the court for the sake of the argument in the case conceded that the description of the premises in the declaration originally was insufficient, but held that the court below properly permitted an amendment during the trial. The description of the premises in the declaration in that case failed to comply with the portion of the statute which we have italicised, and which was not incorporated in our Code.

In *Hitchcox* v. *Rawson*, 14 Gratt. 526, the declaration set out, that the plaintiff was possessed in fee simple of a tract of land in the county of Ritchie containing one thousand one hundred acres and bounded as follows, setting out the boundaries ; and being so possessed thereof the defendant afterwards entered into said premises and withholds from the plaintiff the possession of "*two hundred acres in and adjacent to the waters of Hughes's and Bunnell's runs, it being a portion of the above mentioned tract of eleven hundred acres of land.*" The court regarded the two hundred acres as the premises claimed and held this description as too vague ; as it certainly was. But I infer from the opinion of the court, that if the premises claimed had been the whole tract of one thousand one hundred acres, the description would have been regarded as sufficiently definite. In this opinion, while the vagueness of the description of the two hundred acres is commented on, there is no intimation, that there was any indefiniteness as to the description of the whole tract.

Syllabus 1.

In the case before us the premises claimed are in the first count said to adjoin what is known as the old William Postlewaite farm and to contain one hundred and fourteen acres ; and its boundaries and abuttals are given in detail. In the second count these premises are described as in Monongalia county, and as the same tract, that was conveyed to the plaintiff by the heirs of William

Postlewait, Jr., by deed bearing date the 10th day of January, 1856, and of record in the recorder's office in said county; and its boundaries and abuttals are set out in detail. We are of opinion, that the premises claimed are described in each of these counts with convenient certainty, so that from the description possession thereof might be delivered by the sheriff, and that this description furnished no ground on which the court could have sustained the demurrer.

Another objection is urged against these two counts. In neither of them is it alleged, that the defendant *unlawfully* withholds from the possession of the plaintiffs the premises claimed, which, it is claimed, is the very gist of the action. The language of these counts is : "That the said plaintiffs heretofore, to wit, on the first day of January, 1864, were possessed of a tract of land (describing it,) the title to which they claim in fee simple; and being so possessed thereof the defendant afterwards, to wit, on the day and year aforesaid, entered upon the premises and ejected them from their said land and still holds them out of the possession thereof." The supposed defect in these counts is in their failure to say that this holding them out of possession was *unlawful*. This failure would not prior to the Code of 1849, have made these counts fatally defective, as will appear from the forms of declarations used prior to that time. See Conway Robinson's Forms page 171. Has that Code made such omission fatal to a declaration in ejectment? The 7th section of chapter 135 of that Code (see edition of 1860, page 610) provides: "It shall be sufficient for the plaintiff to aver in his declaration, that on some day specified therein (and which shall be after the title accrued) he was possessed of the premises claimed, and being so possessed thereof, that the defendant afterwards, on some day to be stated, entered into such possession, and that he unlawfully withholds from the plaintiff the possession thereof to his damage such sum as the plaintiff shall state." The 5th section provides, that "the

person actually occupying the premises shall be named defendant in the declaration. If they be not occupied, the action must be against some person exercising acts of ownership thereon, or claiming title thereto or some interest therein at the commencement of the suit." The sections are taken substantially and almost verbatim from the New York Statutes then in force. See Revised Statutes of New York, volume 3, chapter 5, sections 7 and 4.

The Supreme Court of the United States in *Harvey* v. *Tyler*, 2 Wall. 348, construed this fifth section in the Code of Virginia. They say: "The Code of Virginia, as well as several other States, allows the action of ejectment to be brought against persons claiming title or interest in the property, although not in possession. It says 'the person actually occupying the premises shall be named defendant in the declaration. If they be not occupied, the action must be against some person exercising ownership thereon, or claiming title thereto or some interest therein at the commencement of the suit.' If then there is a part of the tract claimed by some person, on which there was no occupant, the case existed, which the second clause of the section provides for. The policy of this act is obvious. It is, that persons out of possession, who set up false claims to land, may by a suit in ejectment, which is the legal and proper mode of trying title, have that claim brought to this test. The act provides, that such a judgment is conclusive against all the parties; and thus the purpose of the law, to quiet title by a verdict and judgment in such cases, is rendered effectual. The language of the Code of New York is identical with that of Virginia on this subject; and the construction we have given to it was held to be the true one by the Supreme Court of the former State. See *Bowyer* v. *Empie*, 5 Hill 48." See also *Shaver* v. *McGraw*, 12 Wend. 558; *Edwards* v. *Farmers' Fire Insurance and Loan Co.*, 21 Wend. 467.

It does not appear from the case of *Harvey* v. *Tylor*,

2 Wall. 348, what the form of the declaration was; and, it may be, it was in the usual form, that it set forth the facts named in said seventh section in the Virginia Code. And as that section expressly declares, that the allegation of these facts in the declaration shall be sufficient, I cannot well see why the plaintiff in such a case could not recover on a declaration which the statute says shall be sufficient in any case, as I understand it, though in the particular case not a single fact stated in the declaration be proven except the fact that the plaintiff was out of possession, and which is not distinctly stated but is only to be inferred from what is stated. But it would be strange indeed, if the plaintiff were to allege in his declaration, that he was the owner in fee of the land claimed, properly describing it, that it was unoccupied and that the defendant was claiming title thereto at the commencement of the suit, that he could not recover on such a declaration, though this fifth section says he may recover on just this state of facts. The Code does not, I think, establish so absurd a state of the case; for there is nothing in it to prevent the plaintiff from recovering, when he states in his declaration every fact necessary to enable him by the provisions of the Code to recover, and proves those facts.

The statute, section seven, does not say: "The plaintiff shall aver in his declaration" the facts stated in the seventh section, when they are not the facts on which he relies to make out his case. It only says: "It shall be sufficient to aver these facts" named in this section. In other words, it confers on the plaintiff the privilege of proving his case as stated in the fifth section without his averring the facts stated in the fifth section in his declaration, and exempts him from proving the irrelevant facts stated in his general declaration. That the plaintiff need not allege the facts named in this seventh section, provided he alleges facts, which entitle him to recover by other sections of the act or by the common law, seems to me to have been settled by numerous de-

cisions in New York. Thus it has been often decided that a declaration is good, which simply avers, that the plaintiff has lawful title as owner in fee of the real estate in controversy, fully describing it, and that the defendant is in possession of it and unlawfully withholds the possession thereof from the plaintiff; and that it is not necessary to allege in the declaration other facts set out in this seventh section in the Virginia Code, that the plaintiff was possessed of the premises claimed, and being so possessed thereof, the defendant entered into the premises. See *Ensign* v. *Sherman,* 14 How. Pr. 439; *Garner* v. *Manhattan Building Association,* 6 Duer 539.

So it has been held, that it is sufficient to allege in the declaration that the plaintiff owned the land in controversy, and that the defendant claimed to own the land in controversy, and that in such case it is not necessary to allege the fact stated in this seventh section, that the defendant unlawfully withholds the possession thereof from the plaintiff. See *Bowyer* v. *Empie,* 5 Hill 49.

The first section of chapter one hundred and thirty five of the Code of Virginia of 1860, page six hundred and nine provides, that the action of ejectment may be brought whenever it could be brought at common law; and these New York decisions show clearly, that the declaration need only to set out the facts, which by their statute law or by the common law were sufficient to entitle the plaintiff to recover.

In *Tabscott* v. *Cobbs et al.,* 11 Gratt. 172, it was decided, that if a party in possession of land claiming title thereto is entered upon and ousted by another, the party entered upon may recover the land in ejectment, when the defendant has not title, though there be an outstanding better title in a third party; and this is in accord with the New York decisions.

In the case before us all the facts, which were necessary to allege or prove according to the Virginia decisions, are alleged in the first and second counts in the declaration. It is true, that they do not allege, that the

defendant did not have title to the land in controversy, nor that after he entered upon and ejected the plaintiff, they had not conveyed the land to him. But these facts, if they existed, are obviously matters of defence, and the plaintiff is never required to negative the existence of facts, which are matters of defence; it is sufficient always for him to state facts, which *prima facie* in the absence of other facts make out his case. It would be absurd to require him to go further and negative all facts, which the defendant could possibly rely on to make out a defence.

But it is urged, that though it was necessary to allege, that the defendant had no title, when he entered, and did not afterwards acquire a good title from the plaintiffs or any one else, yet the plaintiff ought at least to have alleged, that the defendant's withholding the possession of the land from the plaintiffs was unlawful. Whether such withholding was lawful or unlawful is obviously a mere question of law. The allegation, that it was unlawful, is no statement of any fact, but a mere statement of a legal conclusion. If the facts stated in the declaration show, that the withholding of the possession from the plaintiff was lawful, the allegation of the plaintiff in his declaration, that it was unlawful, would be idle and would not make the declaration good. On the contrary, if the facts stated in the declaration, showed, that the withholding of the possession from the plaintiff was unlawful, it would be idle to so state, and it would not make the declaration any better than it would be, if such idle statement was omitted.

Justice Emott in the case of *Ensign* v. *Sherman*, 13 How. Pr. 37, in speaking of the insertion of this word "unlawful," in an action of ejectment as qualifying the withholding from the plaintiff of the possession of the premises by the defendant says: "It has been repeatedly decided, that the allegations, that an act is 'unlawful,' is not the statement of a fact, but of a conclusion of law. If there are no other facts stated, showing that the par-

ticular act or refusal of the party, which is complained of, is a violation of his duty, or of the rights of others, the mere adding to the statement of such act or refusal the epithet, unlawful, will not be a sufficient averment of its wrongfulness or illegality, where the act is indifferent in its nature, and not evidently or essentially wrong or criminal in itself an act, which may or may not be right and lawful according to the circumstances under which it is done, is not properly averred to be unjust and unlawful by merely calling it such. The facts, which make it a wrong, must be pleaded as they are to be proved; and from them the conclusion follows, that the party is acting unlawfully in what he does."

It is true, that the decision in this case, rendered at a special term by Justice Emott, was reversed at a general term, (See 14 How. Pr. 439); but it was reversed because Justice Emott held, that it was necessary for the declaration to state the facts set out in the first section above quoted, that is, to aver that the plaintiff was in possession of the premises and the defendant had entered on the same and ejected the plaintiff, and that it was not sufficient to allege that the plaintiff had lawful title to the premises, and that the defendant was in possession of the same and unlawfully withholds the possession from the plaintiff. But while this case was properly reversed, yet what was said by Justice Emott in reference to the use of this word "unlawful," was sound and was not disapproved by the Supreme Court at the general session. On the contrary they say (See 14 How. Pr. 442) : "The charge that the defendant unlawfully withholds the possession of the premises, is undoubtedly very general, *and states a legal conclusion.* It was sanctioned however by the revised statutes, and when coupled, as in this case, with the allegation that the plaintiff is the owner in fee simple, is sufficiently explicit. *It states facts to which the characteristic may well be applicable.*" They add : "It would be impossible for the plaintiff to state particularly every way in which one

1880
Special Term.

Postlewaite *et al*
v.
Wise.

might lawfully hold possession of the land, of which another was owner in fee simple."

It seems to me therefore clear, that when the facts stated as in this declaration show, that the withholding of the possession was unlawful, it is unnecessary to allege such withholding to be unlawful according to any correct rule of pleading. And we have seen, that the mere fact, that the seventh section above referred to qualifies the withholding by the word unlawful, does not require of the pleader in every case to do so; for in some cases we have seen, it is not necessary to allege any withholding or any ejection of the plaintiff from the land. The fact is, that neither the ejection of the plaintiff by the defendant, nor his withholding the possession of the land unlawfully from the plaintiff, is now the gist of the action of ejectment. The only things absolutely essential for the plaintiff to show under the Code of 1860 is, that he is entitled to the possession of the land in controversy, and that the defendant either claims the land or else withholds it from him, and perhaps also that the plaintiff was, when the suit was commenced, not in possession of the land. This was so decided in *Taglor* v. *Crane*, *et al.* 15 How. Pr. 358. I am therefore of opinion, that the circuit court did not err in overruling the demurrer in this case to the declaration, and to the first and second counts thereof.

The next error assigned and relied on by the counsel Syllabus 4. of the plaintiff in error is, that the court improperly admitted in evidence copies of four deeds, which, it is insisted, were not legally recorded because of certain defects in their acknowledgment and authentication. Copies of these four deeds with the identical certificates of acknowledgment and authentication were offered in evidence by the plaintiffs on the first trial of this case, and were admitted to go before the jury as evidence, though objected to by the defendant; and this Court expressly decided, that the circuit court did not err in admitting them. See 3 W. Va. 455. These questions are

therefore *res adjudicata* in this case and will not be again examined by us. Counsel argue that there were but two judges of this Court who concurred in this decision, and it may therefore be properly again considered. It might certainly be reconsidered by this Court, whenever the questions arise in another case; but it certainly cannot be reconsidered in this case. The decision of this case by this Court, though but two judges concurred in the decision, determines the law in this case.

The next error of the circuit court assigned and relied on by the counsel of the plaintiff in error is, that the circuit court erred in not rendering a judgment in favor of the defendant, because the plaintiffs had by omitting to have this tract of land placed on the commissioners' books forfeited the land to the State under the act of February 27, 1835, and those, under whom the defendants claimed, acquired the State's title by obtaining a patent for the land in 1856. Unquestionably the plaintiffs can not maintain their action, if this land was forfeited to the State under this act. See *Usher's heirs* v. *Pride*, 15 Gratt. 190. The only question then is: Were these lands forfeited under this act? In stating the case we have said, that in our opinion these lands had been omitted from the commissioners' books for a much longer time than by that act was necessary to work a forfeiture of them to the State, and such forfeiture did occur, unless it was prevented by the latter clause of the second section of the act of February 27, 1835. See Session Acts of 1834-35, page 12. This section provides, that such lands may be entered on the books of the commissioners of revenue before July 1, 1836, but "upon failure so to do all such lands or parcels thereof not now (February 27, 1835), in the actual possession of such owner or proprietor by himself or his tenant in possession shall become forfeited to the commonwealth after July 1, 1836." This land was not so entered and was forfeited, unless it was on February 27, 1835, in the actual possession of the parties, under whom the plaintiffs claim.

The evidence on this point was contradictory and unsat-
isfactory. The evidence in this case was demurred to
by the defendant in the court below. The rule in such
case is, that by it the demurrant allows at the least full
credit to the evidence of the demurree and admits all the
facts proved by, or that a jury might fairly infer from,
such evidence. And in determining the facts inferable
inferences most favorable to the demurree will be made
in cases of grave doubt. See *Miller, use, &c.,* v. *Insurance Co.,* 8 W. Va. 515. Applying this rule to the evidence in this case I am of opinion, that the court below
did not err in concluding that the persons, under whom
the plaintiffs below claimed, were in the actual possession on February 27, 1835, and that therefore this land
was not forfeited to the State.

The evidence on this question has been carefully examined and considered. It would extend this opinion
to an unreasonable length to state this evidence, as it
occupies some seventy pages of the printed record. It
must suffice therefore to say, that there was evidence offered by the plaintiffs, which taken by itself would not
only have justified but required the court to hold, that
the land was in the actual possession of the plaintiffs
below on February 27, 1835. For it was proven, that
the persons, under whom the plaintiffs below claimed,
were in the actual possession of the land till one Barrichman took possession of the land; and some of the
evidence of the plaintiffs taken by itself certainly
showed, that Barrichman did not take any sort of possession till after February 27, 1835. But it is insisted
by the counsel of the defendant, the plaintiff in error,
that this evidence of some of the plaintiffs' witnesses is
in conflict with what he assumes to be undisputed facts.
But the difficulty is that some of these facts, which are
assumed to be undisputed, are not so clear and unquestionable. On the contrary, some of them are in conflict with some of the plaintiffs' testimony. Again, if
these facts so assumed were really undisputed, they would

not even tend to show, that Barrichman was in the possession of this land on February 27, 1835, unless we further regard as established the fact, that he left this land in October, 1836. But this is proved by no one except Barrichman himself; and the court might well have regarded his statement in this respect as unreliable, as it could not well have been true, if portions of the evidence of the plaintiffs was to be regarded as true; and as there was much evidence, which tended to show, that his evidence could not be relied upon, and as almost all the testimony shows, that he did not take possession of this land for at least a year after he says he did, and did not remain upon it as long as he says he did by at least a year, as he was turned out of possession by an execution on a judgment in a writ of unlawful entry and detainer, and from this the date when he left this land could be ascertained accurately. But the record in this case was objected to as evidence by the defendant below on the first trial; and this Court, when the case was formerly before it on an error assigned by the defendant below, held, that this record was not admissible evidence; and on the last trial of the case it was not introduced, so that the court below could not, and this Court cannot, look at it and thus ascertain its date.

There was on the question, when Barrichman was in possession, nothing but parol evidence, the memory of witnesses after a lapse of more than thirty years; and their evidence was confused and conflicting. The only written evidence in the case throwing any light on this point was the deed of this land to Barrichman's brother, which, unfortunately for the defendant below, bore date September 26, 1836. If this was the real date of Barrichman's purchase of this land, it would prove the case of the plaintiffs below. This deed, Barrichman says, was not made till some three years after his purchase of the land; but this statement is in conflict with some of the plaintiffs' evidence as to the date of this purchase. There was, I think, evidence which fairly tended to prove,

that he was not in the possession of this land and did not purchase it until after February 27, 1835, and though there was much evidence tending to prove the contrary, yet on a demurrer to evidence by the defendant below, on the rule we have laid down as to the manner in which evidence should be considered on a demurrer to evidence, we do not think that the conclusions reached by the court below can be regarded by this court as erroneous.

The next ground of error assigned and relied on by the plaintiff in error is, that on this declaration, which claimed the whole of this tract, a verdict and judgment could not properly have been rendered for six undivided seventh parts thereof, even if the evidence had shown the plaintiffs entitled to that portion. This is based upon the provision in the Code of 1849, which says, that " when the plaintiff claims an undivided share or interest, he shall state the same." Sec §9, ch. 135 of Code of 1860, p. 610. But the same Code of 1849 provides, "that if the verdict be for an undivided share or interest in the premises claimed, it shall specify the same." See §26, ch. 135 of Code of 1860. The plaintiffs in this case claimed the whole of this tract of land; and therefore so set out their claim properly in the declaration; but having proved title to only six sevenths thereof, the jury under this twenty-sixth section properly rendered a judgment accordingly. See *Callis* v. *Kemp*, 11 Gratt. 78. This case was decided on May 9th, 1854; and as the Code of 1849 is not referred to, it may be that it arose before the passage of the Code, as is contended by the plaintiff in error. If this be so, it does not determine what was the law upon this point, whereas in the case at bar the suit was brought after the passage of this Code. But the provisions of this Code on this subject are identical with the statutes of New York, and were taken from them by the revisors (see Rev. Stat. of N. Y., vol 3, ch. 5, §§ 9, 23, pp. 573-574); and it has been settled in New York, that under their statute, when the plaintiff claims the whole of a tract of land, he may prove

1880
Special Term.

Postlewaite et al
v.
Wise.

his right to an undivided part thereof, and a verdict and judgment may be rendered for such undivided part of the tract. See *Harrison & Dorrival* v. *Stevens*, 12 Wend. 171. The circuit court therefore did not err in this respect.

Again it is urged, that the court below erred in rendering a judgment for the plaintiffs, because the land was not identified sufficiently by the evidence. I have examined the evidence, and think that the land was sufficiently identified to justify the verdict and the judgment.

Syllabus 3.

Again it is claimed, that it was error to render any judgment for damages, as none were claimed in the first and second counts, on which alone the plaintiffs did or could recover. The damages claimed at the end of the declaration applied to each of the counts. It is both unusual and unnecessary to insert the claim for damages at the end of each count; damages for all the causes of action in the several counts may be claimed at the end of the declaration. That this was intended to be done, and was done in this case, appears from the face of the declaration, and as notice of this claim was subjoined to the declaration, as required by law, and as the verdict and judgment were sustained by the evidence, the circuit court did not err in this respect.

It is further assigned as an error, that the court erred in not rendering a judgment against the plaintiffs in the third count for costs. If such error existed, it would be no ground for reversing the judgment; but in fact no such error exists, as judgment was rendered against the plaintiffs in the third count for his costs incurred by reason of their having been made parties plaintiff in the case, and these are all the costs which the defendant was entitled to recover.

These are all the errors assigned by the defendant below in his petition; but in the argument of the case another error is relied on, which we have a right to assume was not called to the attention of the court below, and which has only been noticed by the counsel of the plain-

tiff in error since the printing of the record. One seventh of the land in controversy descended from William Postlewaite, Sr., to his daughter, Ruth, who had an only child, Malinda, who married one Clayton. Both Ruth Postlewaite and Mr. Clayton died; and on the death of Ruth Postlewaite one undivided seventh of this land descended to her only child, Ruth Clayton. This one undivided seventh of this land was claimed by the plaintiffs under a deed to them executed by Malinda Clayton and duly recorded. This deed is dated June 10, 1856, and was signed by her and all the heirs of William Postlewaite, Sr., deceased, except one of them, and it was duly acknowledged by them all, including Malinda Clayton, before justices of the peace in Ohio. The acknowledgment of Malinda Clayton was made in Licking county, Ohio, on September 15, 1856, and was duly recorded in Monongalia county on March 6, 1868. It is now apparently for the first time contended, that there is no evidence, which justified the jury or court inferring, that when this deed was executed, either Ruth Postlewaite or the husband of Malinda Clayton were dead; and if either of them was not then dead, this failed to convey the one seventh of said land, which on the death of Ruth Postlewaite, her mother, descended to her; and the court and jury erred in including this seventh, as they did, in the verdict and judgment.

The parol testimony shows the heirship of Ruth Postlewaite and her daughter, Malinda Clayton, and that for a number of years before the institution of the suit Ruth Postlewaite and Mrs. Clayton were dead; but it fails to show when they died, or that they were dead before June 10, 1856, the date of this deed, under which the plaintiffs claim. Is the failure of proof supplied by any documentary evidence in the case? With reference to Ruth Postlewaite it does supply this defect of proof. This deed itself was signed not only by Malinda Clayton, but by her uncle, Jarvis Postlewaite, and his wife, Elizabeth Postlewaite, by her aunt, Deborah Critten, by

4

her uncle by marriage, Jacob Critten, by her aunt, Phebe Critten, and by her uncle by marriage, Gabriel Critten, and by her uncle, Joseph Postlewaite. The mere declaration of any of these parties would be received as evidence not only of the death of Ruth Postlewaite, the mother of Malinda Clayton, and the sister or sister-in-law of the other parties, but also of the date of her death; and the recital in this deed is, that at the time it was executed Ruth Postlewaite was dead, Malinda Clayton being therein recited to be " daughter and heir at law of Ruth Postlewaite, deceased." This recital is proper evidence of her death at that time, as it might have been proven by the oral declaration of any of the parties so related to her. See *Jackson* v. *Cooley*, 8 Johns. 127; *Russell* v. *Jackson*, 22 Wend. 277.

It might be urged, that while this original deed by its recitals might prove the death of Ruth Postlewaite, and that it occurred before the execution of this deed, it could not be proved by a copy of this deed taken from the office in which it was recorded. This proposition I am not prepared to admit. In the case of *Jackson* v. *Cooley*, 8 Johns. 127, the death was proven by the production of a certified copy. But if this proposition was true, we cannot say, that the original deed was not produced and proved in this case. The original deed was before the court, not a certified copy, on the first trial of the case, as appears in 3 W. Va. 455. On the last trial the demurrer to the evidence in reference to the deed simply says in reciting the evidence before the jury: " The deed of Postlewaite, Sr.'s heirs to Jarvis and Albert, 10th of June, 1856, one hundred and fourteen acres (for said deed see it inserted in the original printed record, pages thirty five, thirty six and thirty seven)." This refers to the printed record when the case was formerly before this Court, and the deed referred to is the original deed, not a certified copy. I am therefore of opinion, that the circuit court on the demurrer to the evidence was justified in inferring that Ruth Postlewaite died prior to June 10, 1856.

But is there any evidence in the record, which justified the conclusion that Malinda Clayton's husband died prior to that time? There is evidence, which on this demurrer to the evidence justified this conclusion. Alexander Evans, who married the widow of Ruth Postlewaite's brother, testified that Clayton and his mother-in-law, Ruth, died in Illinois, as he understood, and after that Malinda, his widow, came back to Ohio. He could not say what time he heard that Ruth and Clayton died, but it was before the institution of this suit. This deed signed by Mrs. Clayton was acknowledged by her and by all the other parties, who acknowledged it in the State of Ohio. It was acknowledged as well as executed after the death of Ruth Postlewaite, as we have seen; and the inference from its being acknowledged by Mrs. Clayton in Ohio is, that it was executed after her return to Ohio after the death of Ruth Postlewaite, and therefore after the death of her husband, who died before she returned from Illinois. The inference may be drawn from this evidence, that both these parties died in Illinois at about the same time, and both prior to the execution of this deed. It was acknowledged by Mrs. Clayton in the manner in which deeds are acknowledged by unmarried women, not in the manner in which married women acknowledge deeds, though it was otherwise acknowledged by several married women. I think on a demurrer to evidence by the defendant the court below was justified in inferring, that, when she signed this deed, her husband was dead.

I am therefore of opinion, that there was no error committed by the circuit court in this case, and that it must be affirmed, and that the defendants in error, Jarvis Postlewaite and Albert Postlewaite, must recover of the plaintiff in error, John A. Wise, their costs, expended in this court, and damages according to law.

JUDGES JOHNSON AND MOORE CONCURRED.

JUDGMENT AFFIRMED.