# CHARLESTON.

## McDermitt v. Forbes.

Submitted November 18, 1913.   Decided November 25, 1913.

1. APPEAL AND ERROR—*Verdict—Evidence.*

    A verdict against the weight and preponderance of the evidence should not be allowed to stand, though the evidence is conflicting oral testimony of witnesses in the presence of the jury, when the testimony introduced by the party against whom the verdict is returned is so corroborated by admissions in the individual testimony of the opposite party and by other facts and circumstances appearing as to disclose that the verdict is palpably wrong.   (p. 241).

2. ADVERSE POSSESSION—*Evidence—Deed.*

    In ejectment, a deed can not properly be excluded which joins plaintiff with good title as against defendant, proved by the evidence to have been in the grantor.   (p. 244).

3. EJECTMENT—*Pleading—Interest Recoverable.*

    An undivided interest in a tract of land may be recovered in ejectment, though plaintiff has declared for recovery of the whole of the tract.   (p. 244).

Error to Circuit Court, Mason County.

Action by George McDermitt against Lewis Forbes. Judgment for defendant, and plaintiff brings error.

*Reversed and New Trial Awarded.*
73 W. Va.

*B. H. Blagg* and *John L. Whitten,* for plaintiff in error.

*J. E. Beller,* for defendant in error.

Robinson, Judge:

This suit in ejectment was once before in this court: 69 W. Va. 268. The new trial then granted has been had, resulting in a verdict and judgment for defendant. Again plaintiff comes asking a reversal. Quite a different record is now presented.

It appears that the small parcel of about two acres in controversy was long in the possession of one Gasper Myers, who held the same by hostile occupancy and enclosure in connection with his adjoining land, as against those under whom defendant now claims. That Myers so held it in such a way and for a period sufficiently long to vest him with title to it by adverse possession, is proved conclusively by the testimony, facts and circumstances, including admissions in the testimony of defendant himself. It became a part of Myers' boundary of land, even though it may have been covered by the title papers of those under whom defendant claims. His possession adverse to them gave him the land. It descended to his heirs. They and his widow continued after his death such possession in connection with the whole boundary of which he died seized and possessed. Wherein the verdict of the jury involves a finding different from this, it is wrong and plainly against the great weight and preponderance of the evidence. In so viewing the case, we do not at all transgress the rule that the jury are the judges of the credibility of witnesses testifying before them; for defendant practically admits the fact of the adverse possession of Gasper Myers and his widow and heirs after him, as we have stated it, and the overwhelming facts and circumstances are in accord with his admissions relative to such possession. It will serve no good purpose to go into details in this particular. That the record supports our conclusion as uncontrovertible is enough.

After the death of the widow of Gasper Myers, one of the heirs, Abraham Myers, who had been in possession of the land with his mother, the widow, until her death, conveyed his

interest therein to Stover. The deed by metes and bounds describes a tract of nine acres, more or less, and states that the land is that which was owned by Gasper Myers at the time of his death. No other intention can be conceived from the terms of the deed and the situation and circumstances attending its making than that it includes in the description the small parcel now in controversy. Gasper Myers had made that parcel a part of the nine acres by adverse possession. Abraham Myers in succession to him had built a small building on the parcel and mended wagons therein, besides doing other things on it indicative of continued ownership, as defendant frankly admits. That Abraham Myers by his deed to Stover meant to pass title to the small parcel so long used in connection with the nine acres can not be gainsaid. It is true that for the line embracing this disputed parcel, his deed to Stover merely calls for the line of defendant. But that line had for many years been established by a fence indicating the extent of the adverse possession of the Myers family. That fence had long thrown the parcel in with the Myers land—cut it off from the land of defendant. Defendant admits in his testimony that the fence is there and has been there for years. Clearly it was such line of defendant's land that Abraham Myers contemplated when he made the deed to Stover. By that deed all that Gasper Myers had obtained by adverse possession of the parcel was conveyed to Stover, to the extent of the interest of Abraham Myers. By the deed Stover became a co-tenant with the other heirs of Gasper Myers in the land owned by the latter at the time of his death, and that land included the parcel now in controversy.

Under the Abraham Myers deed Stover went into possession of the nine acres. Thus for himself and his co-tenants he was in possession of the parcel in dispute; for the bounds of his deed, as we have seen, took in the same. He and his co-tenants were the owners of the same by virtue of the descent of the title which Gasper Myers had obtained by adverse possession, and the conveyance of an interest therein.

Stover later conveyed to plaintiff, who entered into possession of the nine-acre tract. But in the deed conveying his interest to plaintiff, Stover made a very significant change in the

description from that by which Abraham Myers conveyed to him. He made the specific calls to exclude the parcel in controversy. And it would seem from the circumstances surrounding the transaction, to say nothing of the plain terms of the description, that this exclusion was clearly intended. The deed to plaintiff from Stover does not call for defendant's line, as the deed to Stover from Abraham Myers called; instead it calls for Deer Lick Branch. Now, the parcel in controversy lies just between Deer Lick Branch and defendant's line as established by the old fence to which we have referred. In every other particular, the calls in the deed to plaintiff from Stover are the same as those in the deed to Stover from Abraham Myers. The change seems to have been made with intention aforethought to exclude the parcel now in litigation. Defendant had been making claim to the parcel; perhaps Stover did not care to warrant title to the same. So by the deed from Stover, plaintiff took no title to the parcel of land involved in this suit. For recovery plaintiff can not, through the deed from Stover, rely upon the title by adverse possession which Gasper Myers obtained, since that deed does not carry to him title to the parcel.

But the case has another feature. In 1908, subsequent to the date of Stover's conveyance to plaintiff, the parcel in controversy was proceeded against by a suit in the name of the State as land liable to be sold for the benefit of the school fund. Plaintiff and Stover were made parties to that suit and directly summoned to answer the same. By decree therein the parcel was sold and purchased by plaintiff. A subsequent decree confirmed the sale and directed that the parcel be conveyed to plaintiff by a special commissioner appointed for the purpose. Pursuant thereto the parcel was conveyed to plaintiff. Though Stover, who, as we have observed, had title to an interest in the parcel, was a direct party to the State's suit for the sale of the land and was duly served with process to answer, he made no defense to the same. He confessed the fact that the parcel was subject to sale for the benefit of the school fund. Though he had opportunity to defend and to show that the parcel was not state land, that it was not forfeited by non-entry or non-payment of taxes, he did not do so. Then as to him that fact is foreclosed; he has

lost the title which he had to the parcel. His interest in the land has been set over to plaintiff by the purchase and deed under the proceedings in the suit. Plaintiff is therefore the owner by the special commissioner's deed of the undivided interest which ·Stover had in the parcel, which the evidence in the record of this ejectment case shows is an undivided one-sixth.

The trial court would not allow the deed from the special commissioner and the record of the suit on which it was based to be admitted as evidence. This refusal was upon the theory that defendant was not a party to that suit and was therefore not bound by the proceedings therein. But clearly the deed and the record underlying it were pertinent and material evidence in this ejectment suit. Those papers were evidence showing that Stover's title to the land in controversy had been transferred to plaintiff. Taken with the fact which we have found undeniably disclosed by the evidence that those under whom defendant claims had lost title to Gasper Myers by adverse possession, if indeed they ever had title, the special commissioner's deed was a link joining plaintiff to the title which Gasper Myers acquired by adverse possession. The case upon the whole discloses that it was plain error to refuse the admission of the special commissioner's deed and the record supporting that deed.

That plaintiff upon the record made at the trial should have had judgment for an undivided one-sixth interest in the small parcel in controversy, definitely described in the declaration, we have no doubt. The court expressed the view during the trial that a suit in ejectment could not be maintained for an undivided interest in land. Under our law such view is clearly erroneous. Code 1906, ch. 90, sec. 26; *Postlewaite* v. *Wise,* 17 W. Va. 23.

The deed of the special commissioner to plaintiff and the record underlying the same should have been admitted in evidence and the case submitted to the jury under instructions covering correct views of the case, thus vouching to plaintiff the verdict and judgment to which he was entitled by the record. For the error in not so trying the case as the law and the evidence demanded, the judgment must be reversed, the verdict set aside, and a new trial awarded.

Poffenbarger, President, *(concurring):*

I am in accord with the conclusion expressed in the opinion and all the subsidiary findings except one, namely, that Stover's deed to McDermitt does not pass such title to the one acre and 149 poles as the former acquired from Myers. The particular description in the Stover deed does not include it, but that description is followed by a general one that does. The latter reads: "Being the same land owned by Gasper Myers at the time of his death." This is aided by the situation, surroundings and purposes of the parties, manifesting intent on the part of the grantor to part with such interest as he had in the land so generally described.

If the subsequent general clause were restrictive, it would have to be rejected, under the rule precluding limitation of a grant in a preceding clause by general terms in a subsequent one. This one does not limit, restrict or cut down. It enlarges, and there is no express conflict between the two descriptions. They may be read together and considered as one, the first part being inaccurate and the other full and complete. But, if they were separate, the last one best comports with the intention of the parties, as shown by the circumstances and their conduct. Both parties thought Stover owned the one acre and 149 poles as well as the residue of the tract Myers had so long used as part of it and claimed as his own. Abraham Myers had put him in possession of it. Under his deed to McDermitt, he yielded possession of that as well as of the other part. Though denying intent to convey it, he no longer claims to own it. He merely tries to disparage his grantee's title by his denial of intent and expression of opinion favorable to the claim of Forbes, conduct the law frowns upon and disallows. An undivided one-sixth of this small remnant of land always used as part of another tract would be practically worthless to him and there is a presumption against intent to reserve so diminutive an interest by a deed conveying the principal subject or to except it, in view of which any terms of the deed at all applicable to it by way of description are sufficient ot pass it. Of course there must be something in the deed, expressive of intent to convey it, but very general and indefinite terms will suffice.

"That (description) must control which best expresses the

intention of the parties as manifested by the whole instrument." Jones on Real Prop. in Conv., sec. 416; *Mylius v. Lumber Co.*, 69 W. Va. 346; *Chapman* v. *Coal Co.*, 54 W. Va. 193, 199; *McDougal* v. *Musgrave*, 46 W. Va. 509; *Rutherford* v. *Tracy*, 48 Mo. 325; *Masterson* v. *Munro*, 105 Cal. 431.

"Generally, it will not be presumed that a party granting land intends to retain a long narrow strip next to one of his lines." *W. M. & M. Co.* v. *Coal Co.*, 8 W. Va. 406. It is presumed he does not. *Idem; Oil Co.* v. *Caldwell*, 35 W. Va. 95, 99; *Clayton* v. *County Court*, 58 W. Va. 253. The interest in question here is not a long narrow strip, but it is equally slight, useless to the grantor and inconsistent with general intent and falls under the same rule. The form of the alleged exception is unimportant.

*Reversed and New Trial Awarded.*