APPALINE OIL COMPANY *v.* F. D. CLEMENS

(No. 7501)

Submitted May 10, 1933.    Decided June 9, 1933.

*Robert R. Wilson* and *Wysong & Wysong,* for plaintiff in error.

*Fred L. Fox, Hines, Hall & Hines* and *E. G. Rider,* for defendant in error.

KENNA, JUDGE:

Appaline Oil Company brought an action in debt against F. D. Clemens in the circuit court of Braxton county for the price of certain appliances and equipment furnished by the plaintiff to the defendant. From a verdict and judgment in favor of the defendant, the plaintiff prosecutes this writ of error.

The plaintiff appears to have been a refiner and manufacturer of gasoline and petroleum products. The defendant was a wholesale and retail dealer in these products at Sutton. On March 10, 1927, the defendant, as party of the first part, and the plaintiff, as party of the second part, entered into a contract by which the defendant leased to the plaintiff his filling station at Sutton, the plaintiff agreeing to take over the stock on hand. The plaintiff also agreed to stock a wholesale busi-

ness, the defendant agreeing to manage such business for the term of one year covering the territory specified in the contract and for the commission therein named. The contract provides that it shall continue in force unless terminated upon ninety days' notice by either party prior to its named expiration date. It contains a provision to the effect that the party of the first part (Clemens) shall have the privilege of buying at the termination of the agreement all petroleum products in stock and all equipment and appliances, if any, belonging to the second party (Appaline Oil Company) at the wholesale price, including the cost of installation. The business was conducted under this contract and the plaintiff furnished certain equipment and appliances that were installed on the premises of the defendant and upon the premises of certain retail dealers in his territory who were handling Appaline products. Clemens gave notice ninety days before the year was out that he desired to terminate the arrangement. Pursuant to this notification, the plaintiff sent two of its men to Sutton to arrange the settlement of an indebtedness of Clemens to the plaintiff in the sum of approximately $7,000.00. George W. Gorrell and C. M. Heater were the representatives of the plaintiff who made this settlement. It was done by the giving of a note for $7,000.00 and the acceptance of a trust deed to secure it. The contention of the plaintiff is that this settlement had nothing to do with the equipment and appliances that it furnished to Clemens during the effective period of the contract. They sue for the price and value of this equipment and these appliances. Clemens defends upon the theory that at the time of the settlement, he elected to purchase and take over this equipment and these appliances and that the price thereof was included in the $7,000.00 note and the trust deed securing that note. On this contention, the jury found in his favor.

The plaintiff filed with its declaration and proved the items of equipment and appliances that it furnished to the defendant. It proved the wholesale value. This proof is not disputed. In addition to having filed with its declaration a detailed statement of the items and price of the items that it claimed, during the trial, the court required the plaintiff to file as a further bill of particulars a transcript of its entire

account with the defendant representing an itemized statement of all of the transactions between the plaintiff and the defendant while they were doing business. Plaintiff rested upon its proof that the items had been delivered to and retained by the defendant at the agreed price, and that the amount was due, owing and unpaid to it.

The defendant's testimony consists in his own evidence that Mr. Gorrell, when he came to Sutton to make the settlement in April, 1928, stated to him that he owed the company $4,-000.00 beside the stock and equipment he had on hand and asked him if he wanted to keep that, to which he stated that he did wish to keep it; that thereupon Gorrell went away, figured again and came back and informed him that $7,000.00 would include everything. Defendant says that it was upon this basis that he signed the note and executed the trust deed making the settlement. He points to the language of the trust deed which contains an omnibus clause granting · "all other equipment, tools, fixtures, supplies, appliances and other property of every kind, character and description whatsoever, belonging to and used by the said Clemens, in connection with the business conducted and operated by him" either on or off the premises at Sutton. The defendant's version of what took place at the time of settlement is corroborated by Russel Cutlip, Bill Skidmore and Gray McElwain, who testify that they were present at the filling station when the settlement was being discussed between Clemens and the representatives of the plaintiff and each states that he heard the discussion concerning the amount of $4,000.00 and the statement by the plaintiff's representatives that $7,000.00 would include everything.

In rebuttal of the defendant's testimony, the plaintiff produces both Gorrell and Heater who deny that any such negotiations were had concerning the equipment and appliances belonging to the plaintiff that the defendant, at the time of settlement, had on hand. Plaintiff introduces the transcript of all the transactions between it and the defendant and points out in substantiation of its version of the case that at the time of the settlement, there could not have been on any theory of the books the amount of $4,000.00 due from the defendant to it. It shows from the books that instead of $4,-

000.00, the amount that the defendant owed it at that time was $5,656.36; it shows further that at that time defendant ordered further shipment from plaintiff amounting to $1,-279.39 and received credit for $64.25, making up exactly the items that aggregate the $7,000.00 paid to it by the defendant in the form of the note and trust deed (the note being afterwards retired in full by the defendant) and points out that the language of the trust deed, being restricted in its omnibus clause to property belonging to Clemens, neither binds it nor throws light upon the question in controversy. Plaintiff's position is that it had not sold this property to Clemens at the time of the trust deed and that consequently the language would not be applicable to it. Defendant's position concerning this point is that at that time Clemens had bought the property and consequently it was embraced within the trust deed.

In addition to its contention concerning what actually took place at the time of the execution of the trust deed between its agents and Clemens, plaintiff points to four letters which it says it sent to Clemens and to which no reply was made by him. The letters, plaintiff claims, distinctly show its version of what the trust deed covered, and the contention is advanced that Clemens' failure to reply to them must be taken as his acquiescence in that version. The first letter is dated April 11, 1928, and the significant language, plaintiff says, is the following: "We are in receipt of your note for $7,000.00 covering your account and also covering one car of gasoline which we are ordering shipped to you today." The second letter is dated September 25, 1928, and informs Clemens explicitly that he is in possession of the disputed equipment and appliances, requests him to make his election as to whether he wishes to retain it or return it, and informs him of the wholesale prices and the total amount at which he can take it over. The third letter is dated October 8, 1928, and simply calls attention to the letter of September 25, 1928, and requests a reply. The fourth letter is dated February 19, 1929, and calls attention to the first letter and to the fact that Clemens has discontinued the handling of Appaline products in the previous September and has been handling in their equipment the products of their competitor. This letter threatens action

unless Clemens makes prompt arrangements to take the material over or return it.

The defendant produced no books or records of his transactions with the plaintiff. He testified that the reason for his not doing so was two-fold: That the man in whose charge his records were had not kept them accurately and dependably, and that some of the more important of his books and records had been destroyed by a flood.

On this state of the record, it is our opinion that the trial court should have granted the plaintiff's motion to set aside the verdict of the jury and grant it a new trial.

None of the figures set up by plaintiff's books were disputed in the least by the defendant. The items that went to make the $7,000.00, for which he gave his note and trust deed, were not controverted by the defendant, except to the extent of his general statement that the witness Gorrell had told him at the time the indebtedness was $4,000.00 and that $7,000.00 would cover the entire matter, including the purchase by the defendant of the equipment and appliances he had belonging to the plaintiff. The defendant's general statements, his lack of knowledge or recollection of details, his utter failure to produce records, the fact that the trust deed that he claims embraced this property under its omnibus provision, contains a very explicit enumeration of other property identical in kind, the fact that some of the property in dispute was in the possession of others, and the entire record of defendant's case, we think, is insufficient to deprive plaintiff's clear and explicit testimony of the status of a plain preponderance of the proof.

Defendant's explanation of his failure to reply to the letters of the plaintiff, one of them received immediately after the trust deed was executed, and all of them making perfectly clear the theory upon which the plaintiff was acting, is wholly inadequate. These letters are very strongly in favor .of the plaintiff. So are the defendant's admissions of the correctness in detail of the plaintiff's figures and account. "A verdict against the weight and preponderance of the evidence should not be allowed to stand, though the evidence is conflicting oral testimony of witnesses in the presence of the jury, when the testimony introduced by the party against whom the verdict is returned is so corroborated by admissions

in the individual testimony of the opposite party and by other facts and circumstances appearing as to disclose that the verdict is palpably wrong.'' *McDermitt* v. *Forbes*, 73 W. Va. 240, pt. 1, syl. 80 S. E. 356. See also *Fuccy* v. *Coal & Coke Ry. Co.*, 75 W. Va. 134, pt. 4, Syl. 83 S. E. 301. We believe that the verdict of the jury in this case is manifestly against the weight of the evidence. For that reason, the judgment is reversed, the verdict is set aside, the plaintiff is awarded a new trial and the case is remanded.

*Reversed and remanded.*