JACOB BIRD, RESPONDENT, v. J. L. PRESCOTT COMPANY, A CORPORATION, AND AMOS L. PRESCOTT AND OTHERS, SURVIVING PARTNERS, APPELLANTS.

Submitted March 27, 1916—Decided November 20, 1916.

1. The plaintiff was injured while in the employ of a copartnership and was induced to forbear bringing suit by an offer, as he says, of a life job. At his demand this offer was put in writing. Nothing was said as to the wages to be paid or any other term of the employment. *Held*, that the writing was not sufficiently definite to make an enforceable contract.

2. A copartnership by which plaintiff was employed was succeeded by a corporation which took over all the assets and assumed certain of the liabilities, not including any liability to the plaintiff. The plaintiff continued at work, his pay was increased, and he was paid by the corporation. In 1913 his employment by the corporation was terminated; whether by his voluntary act or by his discharge was disputed; the plaintiff never tendered himself ready to work for the partnership after he began to work for the corporation. *Held*, that there was no proof of breach of contract by the copartnership.

On appeal from the Passaic County Circuit Court.

For the plaintiff-respondent, *Ward & McGinnis.*

For the defendants-appellants, *Michael Dunn.*

The opinion of the court was delivered by

SWAYZE, J. This action was at first brought against the corporate defendant alone. Subsequently by order of the court, the complaint was amended by joining the surviving partners. Whether the surviving partners were ever in fact brought into court is a question raised in the case and presented by the grounds of appeal. We pass it, since our view of the more important questions makes any expression of opinion on this subject unnecessary.

The plaintiff in 1905 was injured while in the employ of the copartnership, and threatened suit. To induce him to

forbear, one of the partners, plaintiff testifies, offered to give him a life job. The plaintiff was not satisfied with the verbal assurance and demanded "a paper, a contract" as he says. A written paper was thereupon given him by which the copartnership agreed to give Bird steady and permanent work when he was able to return to same. Nothing was said either in the conversation or the written document as to the wages to be paid or any other term of the employment. In this respect the case is subject to the same difficulty that Chief Justice Beasley referred to in *Shaw* v. *Woodbury Glass Works,* 52 *N. J. L.* 7. The paper as well as the conversation on which the plaintiff relies, amount to no more than a friendly assurance of employment and are not sufficiently definite to make an enforceable contract. We might well stop here but another point is equally conclusive against the plaintiff. The copartnership of J. L. Prescott & Company was succeeded in February, 1910, by the corporation of J. L. Prescott Company, which took over all the assets and assumed certain of the liabilities mentioned in a schedule, which did not include any liability to the plaintiff. The plaintiff continued his work, apparently without interruption or change except that his pay was increased and he was paid by the corporation. Whether he had notice of the change does not appear. In 1911, one of the copartners died. In 1913 the employment of the plaintiff terminated; whether by his voluntary act or by his discharge was a disputed question. The trial judge did not put this question to the jury because he said there was no evidence that the plaintiff left any work which he was engaged in for the partnership, and the work he was doing for the corporation must be considered work which he was doing to minimize the damages. He held that there was no proof to go to the jury as to the liability of the corporation, but submitted to them the question of the liability of the partnership. In this respect he fell into error. He seems to have thought there had been a breach of the contract by the copartnership prior to the time when the relations between the plaintiff and the corporation were severed. There is no proof of such breach by the partners. The breach

by the partners is averred to have been on April 26th, 1913; this averment is in the same terms as the averment of a breach by the corporation on the same day. It is therefore impossible to hold that the work done for the corporation was by way of minimizing damages, since there had thus far been no damages to minimize. The partners had never refused to give the plaintiff employment, nor is there any proof that they refused up to the bringing of the present action. The plaintiff never tendered himself ready to work for the partnership after he began to work for the corporation. What in fact happened was that he continued to work for the corporation as he had for the partnership, probably without any thought on either side of the change in the legal situation. The case is not one of novation since there was no agreement to substitute the liability of the corporation for the liability of the partnership. It seems rather a case of abandonment of the former contract necessarily implied from the conduct of both parties. If the plaintiff had a binding contract of service with the corporation, he had incapacitated himself from performance of his contract with the copartnership and the case would resemble that of mutual promises to marry where one party to the contract by marrying another commits a breach which discharges the other party from further liability (*Short* v. *Stone*, 8 *Q. B. A. & E.* 358; *Caines* v. *Smith*, 15 *M. & W.* 188), or the case of a contract to grant an estate where the proposed grantor disables himself by conveying to a third party (*Lovelock* v. *Franklyn*, 8 *Q. B. A. & E.* 371), or the case of a vendor of goods who disables himself from completing the sale by selling and delivering the goods to a third person. *Bowdell* v. *Parsons*, 10 *East* 359. In such a case the other party to the contract may treat it as at an end. *O'Neill* v. *Supreme Council*, 70 *N. J. L.* 410. If, however, the plaintiff did not have a binding contract with the corporation, and was free to carry out his alleged contract with the copartnership, he was bound to tender himself ready to work for the copartnership before he could put them in the wrong and bring suit for breach of contract. This he did not do. If he failed because both he and the partners assented to his

working for the corporation, he is bound by this substitution of the new contract and the abandonment of the old. We are not now called upon to say whether the liability of the co-partnership is consistent with the attempt of the plaintiff to hold the corporation, or whether the bringing of an action against the corporation was an election of remedies from which the plaintiff could not recede. In some of its aspects the case resembles *Coles* v. *McKenna*, 80 *Id*. 48. Nor are we called upon to say whether the proof of an abandonment of the contract with the copartnership and the substitution therefor of a contract with the corporation was so clear that the court should have taken the case from the jury. In some of its aspects the case resembles *Hobson* v. *Cowley*, 27 *L. J. Exch.* 205; *Scarf* v. *Jardine, L. R.,* 7 *App. Cas.* 345; 51 *L. J. Q. B.* 612; *Bond* v. *Walford, L. R.,* 32 *C. D.* 238; 55 *L. J. C.* 667; *Rushbrook* v. *Lawrence, L. R.,* 5 *Ch.* 3; 39 *L. J. C.* 93; and the cases of transfer of business from one insurance company to another, cited in *Leake Cont.* 685. Nor are we called on to express an opinion on the question whether the dissolution of a partnership by the death of a member affects the obligations of the partners upon continuing contracts of service. All that we decide is that the plaintiff has failed to show any breach by the copartners. The judgment is reversed, but without costs, and the record remitted to the end that there may be a *venire de novo*.

*For affirmance*—MINTURN, KALISCH, WHITE, WILLIAMS, JJ. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, BLACK, HEPPENHEIMER, TAYLOR, GARDNER, JJ. 11.