(No. 8110)

Submitted May 8, 1935. Decided June 4, 1935.

HATCHER AND KENNA, JUDGES, dissenting.

*Jacob S. Hyer* and *H. Roy Waugh*, for plaintiffs in error.
*S. T. Spears*, for defendant in error.

WOODS, JUDGE:

This is an action of assumpsit to recover damages on account of defendants' negligence in failing to make collection of three certain $800 notes in accordance with an alleged agreement between them and plaintiff bank. Error is prosecuted to a judgment, entered on a directed verdict, in favor of the plaintiff.

The notes in question, bearing date May 21, 1924, and falling due in two, three and four years, respectively, were made payable to the order of Idella M. Ballah, and signed by M. E. Hymes, as maker, the same having been taken by the former in exchange for certain real estate. A vendor's lien was retained on the face of the deed to secure payment of the purchase money notes. These notes were placed immediately with plaintiff bank as collateral on a larger note in favor of the bank on which Mrs. Ballah was maker. On February 26, 1926, M. E. Hymes conveyed the property aforesaid to M. B. Hymes, trustee, to secure the plaintiff bank on a personal loan. In July, 1929, the cashier of the bank, at

the request of Mrs. Ballah, who did not desire the bank's attorneys Young & McWhorter, to handle collection, went to O'Brien & Hall, whom he knew were representing Mrs. Ballah in the matter, and turned the notes over to O'Brien, who executed certain receipts which the cashier had typed on the back of exact copies of the notes delivered. Each of the receipts read: "Received original of within note for collection July 11, 1929, for benefit of The Buckhannon Bank, Buckhannon, West Virginia. O'Brien & Hall, Attys." Suit was immediately brought by O'Brien & Hall in the name of Idella M. Ballah to enforce the vendor's lien aforesaid. M. E. Hymes, J. C. McWhorter, trustee, and The Buckhannon Bank, a corporation, were made defendants, although in the body of the bill it appears that the legal title to the property was outstanding in M. B. Hymes, trustee, instead of Mc-Whorter. After the indebtedness on the notes was determined, the property was ordered sold, and O'Brien & Hall named special commissioners to make the sale. On September 21, 1929, another order was entered "on motion of the defendant, The Buckhannon Bank, Young & McWhorter, its attorneys," that said decree of sale "shall be without prejudice" to the rights of said bank, and that it have leave to file an answer within sixty days from the rising of the court; and, further, that "this order shall not have the effect of staying or interfering with the execution of the decree of sale heretofore entered." The property was later sold to Idella M. Ballah in an amount slightly less than that due on the notes. After paying costs and commissions, the remainder of the bid was credited against M. E. Hymes' obligation, and a decree against the latter for the balance due of $80.00. Upon execution, July 12, 1930, of a deed to her, Mrs. Ballah conveyed to C. E. Alkire, in consideration of certain properties, theretofore conveyed to her. Alkire in turn sold to Scott Brady. Pending final approval of Brady's application with Buckhannon Building & Loan Association for a loan on the property, Mrs. Ballah executed other deeds of trust to the bank, and, on January 10, 1931, the date the loan was approved, the bank released the Hymes deed of trust. All of Mrs. Ballah's property was later sold for the benefit of Gulland

and Clark, whose claims took precedence over those of the bank. The bank was closed under order of the Banking Commissioner October 15, 1931, to April 29, 1932. The cashier who delivered the notes to O'Brien severed his relationship with the bank July 15, 1933. The present action was instituted March 3, 1934.

The declaration is drawn on the theory that the defendants had been derelict in respect to their alleged employment by the bank to make collection of the three Hymes notes, and that by virtue thereof the bank had been damaged in the amount of the three notes plus interest, Mrs. Ballah's personal indebtedness to the bank being in excess of that amount. In addition to the general issue, defendants filed certain special pleas (held good on demurrer) denying plaintiff's right to recover on the ground (1) that plaintiff at the time of receipt of notes and execution of receipt knew that defendants were representing Mrs. Ballah, and that said notes were received from plaintiff with the understanding and full knowledge on the latter's part that defendants, as attorneys for Idella M. Ballah, were about to institute suit to enforce payment of said notes; that defendants, at the time of receiving the said notes from the plaintiff and executing the receipt set out in the declaration, as plaintiff well knew and as receipt shows on its face, were acting for and on behalf of said Idella M. Ballah as her attorney; (2) that if in fact defendants were originally employed as in declaration alleged, plaintiff should not recover because it, on September 21, 1929, substituted other attorneys to represent it in the vendor's lien suit, and loss, if any, was due to negligence of the attorneys so substituted; and (3) that since under the foregoing order, upon motion of plaintiff, Young & McWhorter were named as its attorneys, it is estopped from asserting that on and after that date defendants represented it.

It appears affirmatively that nothing was said about compensation, or the costs of the suit, at the time of the delivery of the notes to O'Brien & Hall. It is admitted that Mrs. Ballah advanced the costs of suit. The cashier testified that nothing was said to O'Brien & Hall concerning the notes after their delivery. O'Brien was not permitted to deny employ-

ment by the bank, or that the cashier informed him as to the capacity in which the bank held the notes.

The trial court, in directing verdict, took the position that the receipt was conclusive upon the relationship existing between O'Brien and the bank, and that the latter, as a result of such employment, was warranted in leaving the matter entirely to O'Brien & Hall, and were not bound by subsequent events, which, but for the alleged employment, would defeat their claim.

It is apparent that the defense of waiver or abandonment was proper in the instant case, inasmuch as any defense whatever which tends to deny the liability of defendant may be admitted in evidence under the plea of non-assumpsit. 4 Min. Inst. (3d Ed.) 770. So, as we see it, the correctness of the court's action depends upon whether there was sufficient evidence of a waiver or abandonment of the alleged relationship between the bank and the defendants to have gone to the jury. A waiver or abandonment, of course, must be clearly proved. *Cunningham* v. *Cunningham,* 46 W. Va. 1, 32 S. E. 998. This may be effected by various species of evidence, such as by express declaration or agreement, or by acts and conduct manifesting an intent and purpose not to claim a supposed advantage, or by so neglecting and failing to act as to induce a belief that it was the intention to waive or abandon. 27 R. C. L. 911. And whether there has been a waiver or abandonment is generally a question of fact and the sufficiency of the evidence relating thereto is for the jury. 27 R. C. L. 912; 1 R. C. L. 8.

The facts that the cashier, at the time of the delivery of the notes, was conversant with the relationship of attorney and client as between O'Brien & Hall and Mrs. Ballah; that the costs in the vendor's lièn suit were advanced by Mrs. Ballah; that O'Brien, had he been permitted to answer, would have denied that the cashier had any conversation with him, prior to or at the time of the execution of the receipt, relative to employment, or as to how the bank held the notes; that the cashier, up to the time he severed relationship with the bank, never had any conversation with O'Brien and Hall relative to progress, if any, being made in the collection of

the notes; that Young & McWhorter, regular attorneys for the bank, appeared in the vendor's lien suit immediately after entry of decree of sale and obtained additional time in which to file an answer on behalf of the bank; that the Hymes deed of trust was subsequently released, all tend to establish a waiver or an abandonment of the relationship of attorney and client, as between the plaintiff and defendants.

We are of opinion that, under the circumstances, the case should have been permitted to go to the jury under proper instructions.

*Judgment reversed; verdict set aside; new trial awarded.*

HATCHER, JUDGE, dissenting:

No suggestion of estoppel appears in the majority opinion, it being predicated solely on abandonment. At the threshold of abandonment stands intention. "Intention is the first and paramount object of inquiry; for there can be no abandonment without intention to abandon." 1 C. J., subject Abandonment, sec. 8. I cannot pass that threshold. Abandonment of an asset of value by a bank would be a *fraud at law* upon its creditors. No plausible reason is suggested why this plaintiff—hard pressed financially—should *voluntarily and illegally* intend to forego its rights ($2,400.00 and interest) in the contract herein. The last page of the majority opinion marshalls several facts as tending to show abandonment by the plaintiff. Those facts relate to the conduct of plaintiff's cashier, Mrs. Ballah, plaintiff's general counsel (Young and McWhorter), and plaintiff itself (releasing the Hymes deed of trust). I am at a loss to understand how *the conduct of Mrs. Ballah*—not a representative of plaintiff—could demonstrate its intention towards the defendants. I am equally at a loss to understand how the release of one security by the plaintiff (the deed of trust) could indicate an intention to release another and different claim.

Moreover, neither the board of directors, the cashier, nor any other agent of the plaintiff had authority to abandon the right herein. After defining the powers of a cashier, this Court, in *Bank* v. *Wetzel*, 58 W. Va. 1, 5-6, 50 S. E. 886, pro-

ceeds: ''A cashier has no implied power, merely by virtue of his office, to give away, surrender or release the bank's securities. He can do no act which so operates. When he does this he is outside the scope of his authority, is acting not according to usage, practice or usual course of business, but in plain disregard of the rights of the bank. 'The cashier of a bank, unless specially empowered to do so, has no authority to release, otherwise than in due course of business and on payment, the makers of notes or other debtors of banks, or to release sureties or endorsers.' Clark and Marshall on Corporation 2158. Such is the current of authority. 1 Daniel Neg. Instruments, section 395 (1 Ed.) says: 'It is well settled that neither the president nor the cashier of a bank has authority, *virtute officii*, to give up or release a debt or liability to the bank, or make any admission which would release any party to an obligation, negotiable or otherwise, due to the bank—for such purposes the board of directors only having the power to act.' As Thompson on Corporations, Vol. 4, section 4750, says, even the directors have no power to release or give away assets which it is their duty to preserve. (This directorial inhibition is forcibly reiterated in a later edition [Third] of Thompson, *supra*, sec. 1327.) Accord: Morse on Banks and Banking (6th Ed.), secs. 119, 127 and 169; Michie, *idem*, Vol. 4, pp. 123, 129 and 130.

What the officers of the plaintiff could not do voluntarily, they assuredly could not accomplish indirectly, even if they so intended.

Judge Kenna authorizes me to say that he joins in this dissent.