ROY U. BEALL *v.* MORGANTOWN & KINGWOOD RAILROAD COMPANY

(No. 8471)

Submitted February 2, 1937. Decided February 23, 1937.

*Terence D. Stewart* and *Ezra E. Hamstead,* for plaintiff in error.

*Ernest H. Gilbert, Jr.,* for defendant in error.

MAXWELL, JUDGE:

In this action of assumpsit upon written contract between the plaintiff and the defendant, the former obtained against the latter in the circuit court of Monongalia County a verdict and judgment for $1047.11. This review is at the defendant's instance.

On certification this court held that the original declaration in the action was not good because it failed to allege consideration for the defendant's undertaking asserted by the plaintiff as the basis of the action. *Beall* v. *Railroad Co.,* 116 W. Va. 515, 182 S. E. 295. On the remand the declaration was amended by the insertion therein of allegations that the consideration for the defendant's obligation and promise, relied on by the plain-

tiff, was the plaintiff's forbearance to prosecute against the defendant an action of damages for personal injuries received by him as an employee of the defendant.

The contract is set out in *haec verba* in the original opinion. In substance, the contract, dated June 5, 1911, recited that as the result of injuries received by the plaintiff while discharging his duties of fireman for the defendant June 11, 1910, he was not, at the date of the making of the contract, in physical condition to follow his usual occupation of fireman but was capable of performing other work for the railroad company, therefore, by terms of the contract, he agreed to work for the company at whatever he might be able to do, and the company agreed "to employ the said party of the first part (plaintiff) as long as his work is satisfactory to the company, and to give him such work as he may be able to do." The consideration alleged in the amended declaration is dehors the recitals of the contract.

A few days after the execution of the contract, plaintiff went to work in the defendant's machine shops where he continued in service for about six months, then he resumed work as fireman and was engaged in that manner until 1913 when he was promoted to the position of locomotive engineer. From that date, first as an employee of defendant and later, as an employee of the Baltimore & Ohio Railroad Company, he continued in the discharge of duties of engineer until 1932, when, because of a serious falling off of railroad transportation, the plaintiff's services as engineer were not needed, so he was put to work as a fireman. A little later the same year he was furloughed, and has not since been called on to render any service for the defendant, and has been employed only a few days by the Baltimore and Ohio Railroad Company.

In 1920, the stock of the Morgantown and Kingwood Railroad Company was sold to the Baltimore & Ohio Railroad Company and immediately thereafter, the purchasing company took over the management and operation of the properties of the selling company. The plaintiff and other employees of the old company continued

under the assignee in the discharge of their regular duties without interruption of their seniority rights or otherwise, and after the transfer, the plaintiff's wages were paid to him by the Baltimore & Ohio Railroad Company. He became in full degree an employee of that company.

Soon after having been furloughed in May, 1932, plaintiff, on the basis of his contract first sought re-employment of the defendant, then presented his contract to one of the responsible officials of the Baltimore & Ohio Railroad Company and requested that he be placed in active service in accordance with terms of the contract. Later, in consequence of no work having been assigned him, he instituted against the Morgantown & Kingwood Railroad Company this action for damages for breach of contract.

The above mentioned contract was entered into on behalf of the defendant by F. K. Bretz, its general manager. By special plea, the defendant challenges the right of the general manager to enter into a contract with the plaintiff for life employment. The defendant was a close corporation, practically all of its stock being in the ownership of the late Stephen B. Elkins and members of his family. Stephen B. Elkins died in January, 1911. Either following his death or at some date a few months prior thereto, he was succeeded as president of the defendant by his son, Davis Elkins. The directors of the defendant were four members of the Elkins family and the general manager, Bretz. From the testimony of Bretz, called as a witness for the plaintiff, it appears that he has no recollection of signing the contract or the circumstances attendant thereon, but he recognizes and identifies his signature thereto; further, that it was not customary for the board of directors of the defendant to have regular meetings; that the management of the defendant's railroad business was almost entirely under his control and supervision, but that it was not his custom to deal with unusual and important matters without consulting with the president or vice-president of the defendant; that it would have been contrary to his practice to sign a con-

tract of the importance of the one herein involved without first conferring with Stephen B. Elkins or one of his sons; that he has no specific recollection of having done so in this instance but thinks that "unquestionably" he did have such conference.

It is a general rule that contracts for life employment, and other unusual contracts, made by a general manager or other executive officer of a corporation, will not bind the corporation unless expressly authorized or subsequently ratified by the board of directors. *Pedicord* v. *Mining Co.*, 110 W. Va. 116, 157 S. E. 89; *Kelly Convertible Wagon Co.* v. *Rhodes Mfg. Co.*, 102 W. Va. 16, 135 S. E. 242; *Carroll-Cross Coal Co.* v. *Coal & Coke Co.*, 83 W. Va. 205, 98 S. E. 148; *Maxson* v. *Mich. Cent'l. Railroad Co.*, 117 Mich. 218, 75 N. W. 459; *Nephew* v. *Mich. Cent'l. Railway Co.*, 128 Mich. 599, 87 N. W. 753; *Hornick* v. *Union Pac. Ry. Co.*, 85 Kan. 568, 38 L. R. A. (N. S.) 826, Ann. Cas. 1913A, 208; *Bohanan* v. *Railroad*, 70 N. H. 526, 49 A. 103; *Beers* v. *N. Y. Life Ins. Co.*, 66 Hun. 75, 20 N. Y. S. 788; *Carney* v. *N. Y. Life Ins. Co.*, 162 N. Y. 453, 57 N. E. 78, 49 L. R. A. 471, 76 Am. St. Rep. 347; *Gamacho* v. *Hamilton Bank Note & Engraving Co.*, 37 N. Y. S. 725, 2 App. Div. 369.

But there may be circumstances under which such a contract so executed on behalf of a corporation will bind it. *Baltimore & Ohio Railroad Co.* v. *Foar*, 84 F. (2d) 67. A board of directors is presumed to be cognizant of the important business transactions of the corporation. The law will impute to the directors and to the corporation itself knowledge of business transactions and undertakings entered into by a representative of the corporation when the situation is such that the directors should have known about the matter in the course of proper attention to their duties. "The directors are presumed to know that which it is their duty to know and which they have the means of knowing." 3 Thompson on Corporations (3rd Ed.), sec. 1783. Concordant: *Hatfield* v. *Lamb*, 117 W. Va. 275, 185 S. E. 229; *Ream's Drug Store* v. *Bank*, 115 W. Va. 66, 73, 174 S. E. 788; *Fishkill Savings Institution* v. *National Bank*, 80 N. Y. 162, 36 Am. Rep. 595, 598;

*Martin* v. *Webb*, 110 U. S. 7, 15, 3 S. Ct. 428, 28 L. Ed. 49. "It is the duty of directors to know the condition of the corporation whose affairs they voluntarily assume to control, * * *". *Seale* v. *Baker*, 70 Tex. 283, 7 S. W. 742, 8 Am. St. Rep. 592.

Considering the manner in which the defendant's business was conducted at about the time the contract between its general manager and the plaintiff was entered into, we are constrained to the view that knowledge of such contract must be imputed to the board of directors; consequently, at this late day the defendant will not be sustained in its plea that the contract was undertaken to be made on its behalf without its sanction or approval.

But, from the fact that the contract was entered into in such manner as to constitute sufficient execution for and on behalf of the defendant, it does not follow beyond peradventure that the plaintiff is entitled to a recovery based on the contract. The situation must be probed deeper.

Under the course of events herein above recited, has the plaintiff preserved intact his rights under the contract or must he be deemed to have waived them? We are compelled to hold that there was waiver.

In 1920, the plaintiff made no protest against being transferred to the payroll of the Baltimore & Ohio Railroad Company. For twelve years, he continued in that company's employ, and, within that period, made no demand on the Morgantown & Kingwood Railroad Company that it furnish him employment under his contract, nor did he tender himself ready to work for the last named company until after he was furloughed by the Baltimore & Ohio Railroad Company. The obvious fact is that within the period of his twelve years' employment by the Baltimore & Ohio Railroad Company he was not in position to tender his services to the Morgantown & Kingwood Railroad Company unless he was desirous of severing relations with his later employer and looking solely to the former. This, he did not seem willing to do. His long time voluntary service for his new employer

must be taken as a waiver by him of his rights under the contract of employment with the defendant.

The proposed lifetime employment, projected by the aforesaid contract, was not a unilateral undertaking; it was a bilateral obligation. Inextricably interwoven with the company's promise to employ the plaintiff was the latter's tacitly comprised promise to work for the company (defendant) regularly and continuously. The sale of defendant's corporate stock in 1920 did not render it impossible for plaintiff to tender his further services to the defendant and thereby proclaim his intention of fulfilling his part of the contract and of relying on defendant's obligations in the contract set forth.

If it should be held that this plaintiff, after twelve years' indifference to his contract, has the right to turn back thereto, it would be difficult to fix a deadline in such matters. Why not approve like course after twenty-five years, or forty?

The line of reasoning here employed was applied by the Supreme Court of New Jersey in the case of *Bird* v. *J. L. Prescott Co.*, 89 N. J. Law 591, 99 A. 380, involving an alleged life-employment contract executed in 1905 between the plaintiff and his employer, a copartnership, following an injury received by him in the course of his service. Under the contract, he was employed by the partnership until 1910, when it was succeeded by a corporation. Plaintiff continued with the corporation until 1913, when his employment was terminated. In an action for damages prosecuted by him, the court stated in point two of its syllabus: "A copartnership by which plaintiff was employed was succeeded by a corporation which took over all the assets and assumed certain of the liabilities, not including any liability to the plaintiff. The plaintiff continued at work, his pay was increased, and he was paid by the corporation. In 1913 his employment by the corporation was terminated; whether by his voluntary act or by his discharge was disputed. The plaintiff never tendered himself ready to work for the partnership after he began to work for the corporation. *Held*, that there was no proof of breach of contract by the copartnership."

If the contract in suit was breached by the defendant, the breach took place in 1920 when, following the sale of the defendant's corporate stock, the management and operation of the defendant's railroad were taken over by the Baltimore & Ohio Railroad Company, and the plaintiff was relieved of his employment by the defendant. It was, of course, with plaintiff's full knowledge that this change took place. His conduct for twelve years thereafter was inconsistent with reliance on the breach as the basis of legal action by him. "Waiver is where one in possession of any right, whether conferred by law or by contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward." Bishop on Contracts, section 792. In many cases, variant in background of fact, this principle has been applied. Typical: *McKain* v. *Mullen*, 65 W. Va. 558, 64 S. E. 829, 29 L. R. A. (N. S.) 1; *Richmond Mfg. Co.* v. *Fawcett*, 130 Va. 484, 107 S. E. 800; *Eichelbaum* v. *Klaff*, 125 Va. 98, 99 S. E. 721; *Danville Lumber & Mfg. Co.* v. *Building Co.*, 177 N. C. 103, 97 S. E. 718. In the North Carolina case is a clear discussion of the basic distinction between waiver and estoppel.

Waiver is ordinarily a matter for jury determination. *Buckhannon Bank* v. *O'Brien and Hall*, 116 W. Va. 354, 180 S. E. 258. But, as on factual matters generally, a jury verdict respecting waiver cannot be upheld where it is against the plain preponderance of the evidence. Such is the situation at hand. The rule is general that a verdict against the weight of the evidence will be set aside. *Appaline Oil Co.* v. *Clemens*, 113 W. Va. 834, 169 S. E. 792.

Also, we are of opinion that the trial court erred in sustaining the demurrer to the plea of statute of limitations.

For the reasons stated, we reverse the judgment, set aside the verdict, and remand the case to the trial court.

*Reversed; remanded.*