Ray Leonard **ADKINS**, Plaintiff,

v.

**KELLY'S CREEK RAILROAD COMPANY, a corporation, Defendant.**

**Civ. A. No. 3343.**

United States District Court,
S. D. West Virginia,
at Charleston.

Dec. 3, 1970.

 

R. L. DiTrapano, Charleston, W. Va., Robert M. Harvey, Dunbar, W. Va., for plaintiff.

Robert S. Spilman, Jr., and R. Page Henley, Jr., of Spilman, Thomas, Battle & Klostermeyer, Charlestown, W. Va., for defendant.

## MEMORANDUM OPINION

FIELD, District Judge.

Plaintiff, Ray Leonard Adkins, sued defendant, Kelly's Creek Railroad Company, in this Court, alleging a cause of action under F.E.L.A. for an injury sustained by plaintiff on May 8, 1952, in the course of his employment with defendant railroad and, additionally, a cause of action for breach of an alleged oral contract between plaintiff and defendant wherein defendant promised to provide plaintiff with lifetime employment. A motion by defendant for summary judgment was granted as to the F.E.L.A. claim since I concluded that if the contract for lifetime employment had been effected, the cause of action under F.E.L.A. was settled or merged into the agreement, and if no contract for such lifetime employment had been made, then in such event the claim was barred by the three-year statute of limitations. The other aspect of this motion by defendant was denied as to the claim for breach of the alleged contract for lifetime employment, and the case was tried to a jury which returned a verdict for plaintiff in the amount of $117,568.44. As was to be expected, following such a verdict, defendant moved under Rule 50(b) for judgment notwithstanding the verdict or in the alternative for a new trial.

The facts are substantially as follows. Plaintiff, while employed as a section hand by Kelly's Creek Railroad Company, suffered an injury necessitating the amputation of his left leg immediately above the ankle. Following the accident and while he was still hospitalized, plaintiff contends that he was approached by F. W. Wolfe, allegedly the manager of the railroad, with an offer

of lifetime employment in return for which plaintiff was to agree to relinquish his F.E.L.A. claim against the railroad. Plaintiff says he accepted the offer by returning to work and not pursuing his claim against the defendant.

Plaintiff received $4,700 plus his hospital expenses from defendant's insurance carrier and while there was testimony to the effect that he signed a release, it could not be located or produced at the trial. Plaintiff returned to work and continued to work for defendant until 1955 when he was transferred to Warner Collieries Company, the parent company of defendant. After the transfer his paychecks were drawn on Warner Collieries instead of defendant, his workday was forty-five minutes shorter, he received a higher rate of pay, and transferred his union affiliation to one providing greater welfare and medical benefits. In 1959, Warner Colliers Company merged with North American Coal Company and thereafter the Kelly's Creek properties were operated by North American. Plaintiff continued to work for Warner and North American until January 29, 1963, when the latter company ceased all operations on its Kelly's Creek properties. The instant action was subsequently commenced in November, 1965.

In its motion for judgment notwithstanding the verdict defendant contends (a) the Court erred in refusing defendant's motion for summary judgment; (b) plaintiff waived his right to enforce the alleged contract after his employment was terminated by defendant in 1955; (c) plaintiff is barred by the five-year statute of limitations; (d) the alleged promise was not intended to survive or extend beyond the termination of all business operations by the defendant; and (e) F. W. Wolfe, alleged by plaintiff to have offered him the lifetime employment, had no authority, actual or implied, to bind defendant to such a contract. The defendant raises substantially the same issues in its motion in the alternative for a new trial,

and further contends (a) the evidence is insufficient to show the making of the alleged contract; (b) the Court erred in admitting plaintiff's evidence on the amount of damages; and (c) the verdict returned by the jury was excessive and clearly appears to have been given under the influence of sympathy, passion and prejudice.

Of course, the contention that the Court erred in refusing defendant's motion for a directed verdict is inclusive of all of these basic contentions, and if any of those contentions is meritorious, the Court should grant the motion for judgment notwithstanding the verdict. Taking those contentions as a whole, three distinct issues arise on the motion for judgment notwithstanding the verdict. First of all, there is the issue of when the alleged agreement was breached. If, as plaintiff contends, he did not waive his rights when he accepted employment with Warner Collieries back in 1955, the breach did not occur until 1963 when plaintiff was discharged by North American. Conversely, if, as defendant contends, the breach occurred back in 1955 when plaintiff was transferred to Warner Collieries, he did waive his rights when he accepted employment with Warner Collieries and he is barred by the five-year statute of limitations. Next, there is the issue of whether the alleged agreement survives the termination of all business operations by defendant, and finally, there is the issue of whether F. W. Wolfe had authority, actual or implied, to bind defendant to an agreement to provide plaintiff with lifetime employment.

■■ While my summary disposition of the F.E.L.A. "count" eliminated any federal question jurisdiction, neither party challenged jurisdiction with respect to the remaining common law "count." The record fails to clearly indicate whether or not there is diversity between the parties litigant, but in any event jurisdiction in this Court of the non-federal claim may be supported under the doctrine of "pendent jurisdiction." Hurn v. Oursler, 289 U.S. 238, 53

S.Ct. 586, 77 L.Ed. 1148; Rumbaugh v. Winifrede Railroad Company, 331 F.2d 530 (4th Cir. 1964). Regardless of the jurisdictional basis of the non-federal claim, it is the duty of this Court to apply the law of the State of West Virginia in the disposition of the defendant's motion in this case. If the jurisdictional basis is diversity of citizenship, then, of course, the Erie doctrine is applicable, and if jurisdiction rests upon the "pendent" theory, the law of the state is still controlling. 1 Moore's Federal Practice, Pt. 3, para. 0.305[3].

The two leading cases in West Virginia dealing with agreements for lifetime employment on facts analogous to the case at hand are Rhoades v. Chesapeake & O. Ry. Co., 49 W.Va. 494, 39 S.E. 209 (1901), and Beall v. Morgantown & Kingwood R. R. Co., 118 W.Va. 289, 190 S.E. 333 (1937). In the *Rhoades* case the injured plaintiff signed a release of defendant, his employer, in consideration for which he received a written promise of lifetime employment so long as his work was satisfactory to his foreman. Subsequently, the plaintiff was discharged and sued his employer on the contract. The Supreme Court of West Virginia held "there is no lack of certainty or mutuality in the agreement, for all its terms are settled, and by releasing his claim for damages the employé has paid in advance for the option to do such work for his employer as he is able to do, and he cannot be discharged without cause." The *Rhoades* case thus established the validity and enforceability of such lifetime contracts in West Virginia. Subsequently, however, the *Beall* decision placed some definitive restrictions on such lifetime employment agreements.

In the *Beall* case plaintiff, after a disabling injury, agreed to and did forego his right to proceed against defendant, Morgantown & Kingwood Railroad Co., in return for a promise of lifetime employment. Subsequently, the stock of defendant was sold to the Baltimore & Ohio Railroad Company and the B & O took over the operations of defendant.

Plaintiff continued in the same position with the B & O which he had held with defendant without any change in seniority rights or otherwise, but after the merger he was, of course, paid by the B & O. Some twelve years after the merger he was furloughed by the B & O. Plaintiff sought re-employment with defendant and then with the B & O and, failing in those efforts, sued defendant for breach of the contract for lifetime employment. The West Virginia Supreme Court stated at 335 of 190 S.E.:

"In 1920, the plaintiff made no protest against being transferred to the payroll of the Baltimore & Ohio Railroad Company. For twelve years, he continued in that company's employ, and, within that period, made no demand on the Morgantown & Kingwood Railroad Company that it furnish him employment under his contract, nor did he tender himself ready to work for the last named company until after he was furloughed by the Baltimore & Ohio Railroad Company. The obvious fact is that within the period of his twelve years' employment by the Baltimore & Ohio Railroad Company he was not in position to tender his services to the Morgantown & Kingwood Railroad Company unless he was desirous of severing relations with his later employer and looking solely to the former. This, he did not seem willing to do. His long time voluntary service for his new employer must be taken as a waiver by him of his rights under the contract of employment with the defendant."

The *Beall* case stated simply is a decision by the highest court of our state that an employee with a lifetime employment contract from a railroad waives any rights he may have under the contract by continuing to work for the railroad after it has merged or otherwise been taken over by another corporation. This is the law in West Virginia, and as such it is binding upon this Court, and the remaining question is whether the *Beall* decision is applicable to the facts of the instant case.

A review of the evidence indicates that the facts in the present case are not only parallel to those in the *Beall* case, but are considerably stronger and more persuasive from the standpoint of the defendant railroad. Following his injury, Adkins returned to work for the defendant in 1952 and his employment continued until November 15, 1955. A written termination statement was given to Mr. Adkins on that date which he signed acknowledging receipt thereof. Thereafter Adkins was employed by Warner Collieries Company under terms and conditions which differed materially from his old employment with Kelly's Creek Railroad Company. By virtue of his employment with Warner, Adkins received a substantial increase in pay and a reduction in his hours of work. Incident to his new employment he transferred from a local union in District 50 of the United Mine Workers to a local union in District 17 of the U.M.W. At the time he transferred his union affiliation, Adkins was aware of the fact that he was losing his seniority with the Railroad Brotherhood as well as his rights under the Railroad Retirement Act. Additionally, his name was placed at the bottom of the seniority list of District 17 of the U.M.W. On the other hand, in addition to his increase in pay and reduction in working hours, Adkins was given substantial welfare and medical benefits as the result of the transfer of his union affiliation.

In 1959, Warner merged with North American Coal Company and Adkins continued to work until January 29, 1963, when the latter company ceased its operations on the Kelly's Creek properties. The Kelly's Creek Railroad Company continued to operate for a short time after the mine closure and only employees of the railroad continued to work during this period. No employees of North American, including Adkins, performed any work on the railroad during this final phase of its operation.

Following the termination of his job with North American, Adkins made no effort to obtain employment on the railroad nor did he attempt to bring his alleged contract to the attention of any responsible official of North American until the present action was instituted late in the year 1965. Unlike the *Beall* case where the employment contract had been reduced to writing, Adkins relies entirely upon an alleged parole agreement between him and F. W. Wolfe, a development consultant for Warner Collieries Company. Based upon Adkins' testimony, the only parties other than Adkins and his wife who had direct knowledge of the alleged contract were Wolfe and one Josephus Johnson, both of whom were deceased some years prior to the institution of this law suit.

Upon these facts, under the law of West Virginia as set forth in the *Beall* decision, the inescapable conclusion is that as a matter of law the plaintiff, Adkins, waived his rights under the alleged contract of lifetime employment and should not be permitted to recover in this action for the breach thereof. Under these circumstances, the defendant's motion to set aside the verdict and judgment entered herein on February 15, 1969, and enter judgment notwithstanding said judgment in accordance with defendant's motion for a directed verdict will be granted.

With respect to the alternative motion for a new trial, aside from my action with respect to the motion for judgment n. o. v., I can perceive nothing that would justify or require a new trial in this case and, accordingly, the alternative motion for a new trial will be denied.