Kevin D. HAGES, Plaintiff,

v.

ALIQUIPPA & SOUTHERN RAILROAD COMPANY, Defendant.

Civ. A. No. 76–1512.

United States District Court,
W. D. Pennsylvania.

Feb. 28, 1977.

Janice I. Gambino, Pittsburgh, Pa., for plaintiff.

John E. Beard, III, Pittsburgh, Pa., for defendant.

## AMENDED OPINION

WEBER, Chief Judge.

On August 24, 1976, while employed by defendant A & S Railroad, plaintiff was injured allegedly from the negligence of the defendant. On September 1, 1976, plaintiff was informed of his dismissal from A & S, being "dropped as unsatisfactory." On September 13, 1976, plaintiff's union submitted a notice of claim or grievance for wrongful discharge by A & S. Notification of disallowance of claim by the A & S was made on October 26, 1976. A conference between the union and the A & S regarding Hages' discharge occurred on November 1, 1976. The A & S reaffirmed its disallowance of Hages' claim.

A complaint was filed by the plaintiff in the Court of Common Pleas of Allegheny County, Pennsylvania, on November 17, 1976. Count I of the complaint alleged a cause of action under the Federal Employers' Liability Act seeking compensatory damages for alleged injuries received while working on August 24, 1976. Count II of the complaint sought compensatory damages for alleged common law wrongful discharge of Hages by the A & S since he was fired without just cause.

Defendant, the A & S, filed a petition to remove and at the same time a motion to dismiss Count II for lack of jurisdiction because the plaintiff failed to exhaust administrative remedies. Subsequently, plaintiff filed a petition to remand alleging the impropriety of removing an F.E.L.A. claim originally instituted in the state courts. Plaintiff contends that the administrative route has been complied with, therefore Count II should not be dismissed.

I. IS A NONREMOVABLE F.E.L.A. CLAIM REMOVABLE WHEN JOINED WITH AN INDEPENDENTLY REMOVABLE FEDERAL CLAIM?

■ The provisions of the general removal statute, 28 U.S.C. § 1441(c), permit the removal of an otherwise nonremovable claim when joined with a removable, separate and independent claim or cause of action. 28 U.S.C. § 1445(a) expressly prohibits removal from state to federal courts of F.E.L.A. cases in which the plaintiff has chosen to proceed in the state forum initially. In *Gamble v. Central of Georgia*, 486 F.2d 781 [5th Cir. 1973] the court stated that the purpose of § 1445(a) was to take F.E.L.A. cases out of the operation of the general removal statute. *Gamble* involved a wrongful death action removed to the federal court by an impleaded third-party defendant. The Circuit Court reversed the district court's denial of the plaintiff's petition to remand her F.E.L.A. claim to the state court.

Courts have allowed the removal of F.E.L.A. actions (and nonremovable Securities Act, 15 U.S.C. § 77v(a) and Maritime actions) under the theory that the statutory provisions are inapplicable if removal is under § 1441(c), i. e., where otherwise nonremovable claims are joined with separate and independent claims, removable if sued upon alone. *Emery v. Chicago*, 119 F.Supp. 654 [S.D.Iowa 1954]; *United States Industries v. Gregg*, 348 F.Supp. 1004 [S.D.N.Y. 1973], rev'd on other grounds, 540 F.2d 142 [3rd Cir. 1976] securities; *Cunningham v. Bethlehem Steel*, 231 F.Supp. 934 [S.D.N.Y. 1964] maritime claim.

The court in *Emery*, supra, a proceeding on a motion to remand to state court, stated that it rests upon the plaintiff whether to state a claim solely under the F.E.L.A. Act, prohibiting removal, or unite the F.E.L.A. claim with causes of action that are removable. When plaintiff adopts the latter course, defendant becomes entitled to exercise the right of removal conferred upon it by the removal statutes. This carries the entire case to the court. Since the federal court has concurrent jurisdiction over the F.E.L.A. claim, no questions may not be properly determined by the court. 1A, Moore, *Moore's Federal Practice*, ¶ 0.163]4.–4], 4.–71].

The *Gamble* case, although speaking in absolutes, was not dealing with the situation before us. *Gamble* discussed solely the propriety of removing an F.E.L.A. claim. Plaintiff had raised no independent removable claim with her F.E.L.A. claim, as is the case here, assuming a federal question is raised in Count II of the complaint.[1] Several cases have dealt with this problem and have found jurisdiction to exist. Moore's agrees, finding the statutory prohibitions of § 1445(a) to be inapplicable when removal is sought under § 1441(c). The petition for remand must be denied as to the entire case, the F.E.L.A. cause of action being cognizable under the court's pendant jurisdiction.

## II. DOES COUNT II CREATE AN INDEPENDENTLY REMOVABLE CAUSE OF ACTION BY VIRTUE OF THIS COURT'S FEDERAL QUESTION JURISDICTION

Plaintiff claims that Count II of the Complaint does not raise a federal question permitting removal of this action. It is averred that Count II is premised on common law principles of contract, i. e., wrongful termination of contract. Plaintiff contends that because he has exhausted his administrative remedies prior to suit, he has properly taken his action to the state court. The defendant claims the action is properly removable since Count II raises a federal question.

The complaint alleges that during plaintiff's employment with the A & S, he was covered by a collective bargaining agreement and that he was wrongfully terminated from his employment in violation of that agreement. The construction and application of these agreements are federal questions and, therefore, properly removable to a federal district court since it has authority to decide such questions by virtue of the "arising under" jurisdiction conferred by 28 U.S.C. § 1331.

In *International Association of Machinists v. Central Airlines*, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 [1963] six discharged employees brought suit in the federal district court against the airline claiming that the airline had refused to comply with the dispute procedure established under a collective bargaining agreement subject to the Railway Labor Act. The district court dismissed the action finding neither diversity nor "arising under" jurisdiction. The Fifth Circuit affirmed on the basis that the suit was simply a state created action to construe a contract. The Supreme Court reversed finding that a collective bargaining agreement mandated by the Railway Labor Act was a federal contract enforceable in the federal courts and that questions of interpretation and construction of such agreements were federal questions.

The court in *Machinists* was faced with the determination of whether or not the contractual arrangement made by the parties was sufficient to discharge the mandates of the Railway Labor Act, specifically

---

1. The removing party in *Gamble* was a third party defendant indemnitor of the defendant, standing in the same position as the defendant, although the removal petition recited diversity of citizenship with all parties and the requisite minimal amount in controversy. The District Court had found the indemnity action to be a "separate and independent" cause of action in contract and within the scope of the removal statute, 28 U.S.C. 1441(c). This Court is of the opinion that the only real question involved in *Gamble* was the removal of the F.E.L.A. claim and the content of the opinion of the Fifth Circuit, reversing the District Court, is in accord with this view.

§ 204 (45 U.S.C. § 184). In deciding that federal law would determine whether a § 204 contract was enforceable, the court said:

"If these contracts are to serve this function [provision for § 204 adjustment board] . . . their validity, interpretation, and enforceability cannot be left to the laws of the many States, for it would be fatal to the goals of the Act if a . . . contract were struck down even though in furtherance of the federal scheme. . . .

The contracts and the adjustment boards for which they provide are creations of the federal law and bound to the statute and its policy . . . 'A union agreement made pursuant to the Railway Labor Act has, therefore, the imprimatur of the federal law upon it . . . .'. That is, the § 204 contract, like the Labor Management Relations Act § 301 contract, is a federal contract and is therefore governed by federal law, in the federal courts." 372 U.S. at 691–692, 83 S.Ct. at 961–962.

The rationale in *Machinists* has been applied to cases involving the "wrongful discharge" situation. *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 [1971] is the leading case in this area. In that case, the plaintiff, prior to an automobile accident, had been a railroad employee in good standing. Plaintiff alleged that following the accident, the company refused to allow him to return to work despite the fact that allegedly he had fully recovered and was able to work in the same manner as before the accident. The plaintiff, commencing his action in the state court, claimed "wrongful discharge" and asked for past and future earnings and attorneys fees. The suit was removed to the federal district court which dismissed it for failure to exhaust administrative remedies. The Fifth Circuit affirmed. In overruling its prior decision in *Moore v. Illinois*, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 [1941], which held that a railroad employee's action for breach of an employment contract is governed by state law, the court in *Andrews* noted that the petitioner's election to completely sever his relation with his employer and treat the latter's alleged breach of the employment contract as a "discharge" and thereby rendering his claim distinctly different from the normal disputes over the interpretation of the collective bargaining agreement, did not warrant carrying out an exception to the otherwise mandatory rule of submission of "disputes" to the Board of Adjustment. Important to our inquiry was the Court's comment on the origin of the action of "wrongful discharge" from the collective bargaining agreement.

"Here it is conceded by all that the only source of the petitioner's right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one that entitles him to damages, is the collective-bargaining agreement between the employer and the union." 406 U.S. at 324, 92 S.Ct. at 1565.

The existence of any obligations of the employer to the plaintiff "depend on the interpretation of the collective-bargaining agreement." 406 U.S. at 324, 92 S.Ct. at 1565. In our case, as in *Andrews*, plaintiff's employment rights were created by and are subject to the provisions of the Railway Labor Act and therefore are governed by federal labor law which is paramount to state law. See *Magnuson v. Burlington Northern, Inc.*, 413 F.Supp. 870 [D.Mont. 1976] involving the granting of a petition to remove a suit filed by a train dispatcher who alleged wrongful termination.

Plaintiff in his brief alleges that the above cases lend no support to the defendant's position supporting removal, since they all deal with the attempts of railroad employees to by-pass the administrative remedies route. Plaintiff is correct in stating the context in which these cases arose, however, the decisions are not quite as narrow as he argues.

An action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law, if it requires the construction of a federal statute, or a distinctive federal

policy of a federal statute requires application of federal legal principles for its disposition. The mere fact that a contract is subject to federal regulation does not, in itself, demonstrate that Congress meant that all aspects of its performance or nonperformance are to be governed by the federal law rather than by state law applicable to similar contracts in businesses not under federal regulation. *Lindy v. Linn*, 501 F.2d 1367 [3d Cir. 1974]. *Machinists, Andrews,* and *Magnuson* deal with the question of whether or not disputes stemming from rights and obligations found in the collective bargaining agreement required by the Railway Labor Act, are federal questions thereby conferring federal question jurisdiction to the federal courts. All of these cases answer that question in the affirmative. In the present case, plaintiff's employment rights were created by and are subject to the Railway Labor Act. To deny removal would jeopardize federal labor policies and encourage the proliferation of varying and inconsistent state court constructions of collective bargaining agreements. We find the claim of Count II to raise a cause of action under federal jurisdiction.

### III. DOES THIS COURT RETAIN JURISDICTION OVER THE F.E.L.A. CLAIM IN COUNT I IN THE EVENT THAT COUNT II IS DISMISSED?

Under the pendant jurisdiction of this court, Count I of the complaint is properly cognizable in the event Count II is dismissed for failure to exhaust administrative remedies. Although in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 [1966], where the modern doctrine of pendant jurisdiction was enunciated, the Court stated flatly that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.", 383 U.S. at 726, 86 S.Ct. at 1139, there are a significant number of cases in which state claims have been retained and decided even though the federal claim was dismissed. *Watkins v. Grover*, 508 F.2d 920 [9th Cir. 1974]; *Ryan v. J.*

*Walter Thompson Co.*, 453 F.2d 444 [2d Cir. 1971]; *Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996 [5th Cir. 1974]; *Springfield Television v. City of Springfield*, 462 F.2d 21 [8th Cir. 1972]; *Adkins v. Kelly's Creek Railroad Co.*, 338 F.Supp. 888 [S.D.W.Va.1970], aff'd 458 F.2d 26 [4th Cir. 1972], cert. denied 409 U.S. 926, 93 S.Ct. 224, 34 L.Ed.2d 184 [1972].

Since *Gibbs*, the Supreme Court has allowed pendant state claims to be entertained by federal district courts where the federal claims have become moot, unwilling to defeat the policy of pendant jurisdiction over the primary stages of the action as a prerequisite to resolution of the pendant claim. *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 [1970].

While cases exist in which courts have used their discretion and avoided hearing the pendant state claims, these are the exception and not the rule. Ordinarily the power is exercised if it is found to exist. 13 *Wright & Miller, Federal Practice and Procedure* § 3567 at 454 [1975]. The argument for retaining the pendant state claim is stronger when it is closely tied to questions of federal policy, *Gibbs*, supra. Here, federal policy considerations are especially strong. Congress has given concurrent jurisdiction to F.E.L.A. actions. The very existence of this type of action (F.E.L.A.) was due to Congressional dissatisfaction with the common law duty of master to his servant, supplanting it with a far broader duty to pay damages for death and injury.

### IV. HAS THE PLAINTIFF EXHAUSTED HIS ADMINISTRATIVE REMEDIES?

Defendant asserts in its motion to dismiss Count I that plaintiff's only recourse in the above matter is to submit his claim to the National Railroad Adjustment Board for resolution. It is the petitioner's contention that plaintiff has failed to exhaust his remedies with the board and therefore his cause of action should be dismissed. Plaintiff on the other hand, claims he has pursued his administrative remedies and having ex-

hausted them, absent any decision, has properly taken his claim to state court. Plaintiff alleges his claim was filed pursuant to a letter dated September 13, 1976 (attached as Exhibit B to plaintiff's Supplemental Reply to Defendant's Petition for Removal) and since defendant's position was that plaintiff had no dispute under the collective bargaining agreement (Exhibit C), plaintiff had properly complied with the administrative exhaustion requirement.

The defendant takes the position that the dispute between plaintiff and the defendant clearly arises by reasons of differing interpretations of the collective bargaining agreement. The defendant terminated plaintiff because they found him to be an "unsatisfactory" employee within Article 12 of the agreement. The Union filed a grievance over such discharge demanding reinstatement and back pay on the basis that certain contract procedures were not followed. The grievance was disallowed on the basis that a probationary employee could be "dropped" irrespective of procedures that must be followed with respect to employees with seniority. Plaintiff or his representative was required to pursue the grievance through the procedures established therefor under the Railway Labor Act. Defendant argues plaintiff is not free to drop his grievance and file a law suit.

Consideration of this court's power to hear a pendant state claim in face of the dismissal of the basis for federal jurisdiction is irrelevant if, in fact, exhaustion of administrative remedies has occurred.

Plaintiff alleges proper exhaustion by virtue of (1) the filing of notice of a claim with the A & S on September 13, 1976, demanding compensation for all lost time due to the illegal dismissal of September 1, 1976, and (2) the subsequent letter of J. D. Heath, Superintendent of Industrial Rela-

tions, A & S, dated October 26, 1976, which notified the Union that plaintiff's appeal was void.

Defendant acknowledges the receipt of the grievance from the union representative, and the subsequent disallowance of the claim. The basis for such a disallowance was (a) Hages was dropped from service on September 1, 1976, within 60 days of entering the service of the A & S; (b) at the time of termination, Hages was a probationary employee who could be dropped from employment as "unsatisfactory" pursuant to Article 12 of the collective bargaining agreement (Exhibit D, Defendant's Affidavit), and, (c) under the agreement, termination of a probationary employee was within the sole discretion of the A & S and no requirement of notice and hearing prior to such termination existed.

On November 1, 1976, the Union and the A & S conferred regarding the termination of plaintiff pursuant to the procedure for dispute settlement. The A & S again disallowed the claim of improper termination (confirmed by letter dated December 15, 1976, Exhibit F, Defendant's Affidavit). On November 17, 1976, the plaintiff instituted this action in the Court of Common Pleas, Allegheny County alleging exhaustion of administrative remedies.

In *Andrews*, supra, the Supreme Court found that a grievance for wrongful discharge was a "minor" dispute [2] under 45 U.S.C. § 153 First (i) of the Railway Labor Act since it involves the interpretation and construction of the collective bargaining agreement, and despite the fact the petitioner was treating the employer's action as a "discharge" rather than seeking reinstatement. Here the dispute between plaintiff and defendant clearly arises by reason of differing interpretations of the Agreement. The A & S terminated plaintiff because

**2.** A dispute arises under the Railway Labor Act if the disputed action of one of the parties can arguably be justified by the existing agreement or if the contention that the labor contract sanctions the disputed conduct is not "obviously insubstantial." If either of these elements exist, the controversy is within the exclusive jurisdiction of the National Railroad Retire-

ment Board. *United Transportation Union v. Penn Central*, 505 F.2d 542 [3d Cir. 1974]. Examination of Article 12 of the Agreement, prima facie, lends support to the actions of the A & S in "dropping" Hages as "unsatisfactory" and therefore is not obviously insubstantial, satisfying the Third Circuit Test.

they found him to be unsatisfactory within Article 12 of the Agreement. The Union filed a grievance and the grievance was disallowed on the basis that a probationary employee could be dropped irrespective of procedures that must be followed with respect to employees with seniority. In addition to the above, the Union representative has sent the A & S a formal notice of the union's intention to establish a Special Board of Adjustment in accordance with the Railway Labor Act 45 U.S.C. § 153 Second (Exhibit G, Defendant's Affidavit). This special Board is to consider the charge of wrongful discharge of Hages, as well as other employees. § 153 Second provides the administrative machinery for consideration of the A & S disallowance of claim. An administrative remedy does exist for Hages and therefore dismissal of Count II of the complaint is required.